## In re GRANITE CITY BANK OF DELL RAPIDS, S. D.

(Circuit Court of Appeals, Eighth Circuit. March 13, 1905.)

No. 44.

BANKRUPTCY—GENERAL POLICY OF ACT—PROPERTY IN OTHER DISTRICTS.

An adjudication in bankruptcy operates as a seizure of the bankrupt's property, by which it is taken in custodia legis wherever situated within the United States, and the title and right of possession pass by operation of law to the trustee, as custodian for the court, at once on his selection and qualification. Whether property is within the district or not is immaterial to affect the exclusive right of the court which made the adjudi-

cation to direct its sale, and to determine all claims thereto, on proper notice to the parties in interest, whether they reside within or without the district; the filing of the petition in bankruptcy itself being a caveat to all the world.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, §§ 193–232.]

Petition for Revision of Proceedings of the District Court of the United States for the Northern District of Iowa, in Bankruptcy. For opinion below, see 131 Fed. 1004.

William Wilka having been adjudged a bankrupt by the United States District Court for the Northern District of Iowa, George H. Watson, the trustee in bankruptcy, presented a petition to the court, representing that at the date of the adjudication the bankrupt owned certain personal property on his premises across the state line in South Dakota; that it was of a perishable character, exposed to deterioration, and its retention would entail great expense to the estate. The petition, inter alia, stated that the Granite City Bank of Dell Rapids, S. D., claimed a chattel mortgage on said personal property to secure a large sum of money owing to it by the bankrupt; that when said mortgage was executed said bank had acknowledged that said Wilka was insolvent; and that said mortgage constituted a preference in favor of the bank. The prayer of the petition was for an order "to sell all the grain on said land at private sale upon the markets, and that said stock be sold at public auction as soon as may be, and that a notice or order to show cause why said property should not be sold freed from all liens and claims of the said Granite City Bank, First National Bank, Conrad Schecker, and Mrs. William Wilka, and the said bankrupt, William Wilka," be made; the petition having alleged certain interest claimed in said property by the parties named in the foregoing prayer. On receipt of this petition the referee "ordered that a hearing be had upon the same, and that ten days' notice of said hearing be served upon the lienholders personally, and a copy thereof be mailed to all other creditors on the 4th day of February, 1904."

The record further recites that, "pursuant to the foregoing order, notices were served upon all lienholders of said estate, as is shown by the return upon said notice, and a notice of said hearing was on this 6th day of February, 1904, mailed to all creditors scheduled by the bankrupt, postage prepaid, a copy of which is in the following words and figures, to wit:" (Here follows a copy of the notice served and mailed.) In addition to the notices sent by mail to all the creditors of the estate, service of notice of said petition and order was made personally upon the president of said bank at Dell Rapids, S. D., on the 3d day of February, 1904. On the day set for the hearing of said petition, said Granite City Bank of Dell Rapids appeared by counsel, and objected to the jurisdiction of the court over the bankrupt to make the order of sale petitioned for, for the following reasons: (1) That neither the property referred to, nor the said Granite City Bank, is within the territorial limits over which the court has jurisdiction; (2) that no notice of the hearing upon the petition had been served upon the Granite City Bank within the territorial jurisdiction of the court; (3) that the court has no jurisdiction over the said Granite City Bank, and, without personal service upon the said Granite City Bank within the jurisdiction of the court, it had no jurisdiction of the subject-matter, to wit, the lien of said bank upon said personal property, said property being without the territorial limits over which the court has jurisdiction; (4) that the court is given no jurisdiction by the bankrupt act to order the sale of the property free from liens, without first determining in some proper proceeding the validity of such liens; and (5) that the bankrupt owns only an undivided one-half of the property sought to be sold. No other creditor interposed any objection. On a hearing before the referee, the objections of said Granite City Bank were overruled, and the referee ordered a sale of the property. The order of sale directed the trustee to sell all the grain kept upon said farm described in the trustee's petition, at private sale, for the highest price obtainable, and keep an accurate account of each article sold, and the price received therefor,

and the name of the person to whom sold, which account he shall forthwith file with the referee; and the referee further ordered that "all the other personal property described in the trustee's petition shall be sold at public or private sale, as the trustee may deem to the best interest of all concerned, and that all of said property shall be sold free from any and all liens and pretended liens or claims upon the same, and that the trustee keep an accurate account of each article, the price obtained therefor, and the name of the person to whom sold," and that "the trustee deposit the funds and proceeds derived from the sale of said property in the First National Bank of Rock Rapids, Iowa, and apply the same upon all liens which may be established upon said property, in the order they subsist and become liens thereon."

Exceptions were taken to the action of the referee by the Granite City Bank, and at its request the matter was certified to the district judge for review. In his certification the referee recites, among other things, that said Granite City Bank filed in writing its special appearance for the purpose of objecting to the jurisdiction of the court to make the order of sale; that neither of the parties called any witnesses to testify at the hearing, and that the only evidence before the referee consisted of the papers filed in relation to said order, namely, trustee's petition for order of sale, order for notices thereon, a copy of notice mailed to creditors, a copy of notice served personally upon the persons claiming to have a lien upon said property, and the return of service of same, and the written objections of the Granite City Bank to the jurisdiction of the court; "that, upon inspection of these different filings, and after hearing arguments of counsel for trustee and for the Granite City Bank, the referee found that the trustee had taken possession of said property, and that it was of a perishable nature, and, in pursuance of such finding, made an order to sell said property," etc.

The District Court overruled the objections of the Granite City Bank, and affirmed the action of the referee. The bank has brought the matter to this court on petition for review.

Frank R. Aikens, Harold E. Judge, Henry Robertson, and P. W. Dougherty, for petitioner.

C. J. Miller, for respondent.

Before SANBORN, Circuit Judge, and PHILIPS and RINER, District Judges.

PHILIPS, District Judge, after stating the case as above, delivered the opinion of the court.

The chief contention of the petitioner is based upon a misconception of the scheme and policy of the bankrupt act. The filing of the petition in bankruptcy "was a caveat to all the world. It was in effect an attachment and injunction. Thereafter all the property rights of the debtor were ipso facto in abeyance until the final adjudication. If that were in his favor, they revived, and were again in full force. If it were against him, they were extinguished as to him, and vested in the assignee (trustee) for the purposes of the trust with which he was charged. The bankrupt became, as it were, for many purposes, civiliter mortuus." This was said by the Supreme Court in Bank v. Sherman, 101 U. S. 406, 25 L. Ed. 866, in respect of the operation of the bankrupt act of 1867.

Mr. Chief Justice Fuller, in Mueller v. Nugent, 184 U. S, 1–14, 22 Sup. Ct. 269, 273, 46 L. Ed. 405, said:

"It is as true of the present law as it was of that of 1867 that the filing of the petition is a caveat to all the world, and in effect an attachment and injunction; * * * and, on adjudication, title to the bankrupt's property

became vested in the trustee (sections 70, 21c, Act July 1, 1898, c. 541, 30 Stat. 565, 552 [U. S. Comp. St. 1901, pp. 3451, 3430]), with actual or constructive possession, and placed in the custody of the bankruptcy court."

In short, the adjudication operates as a seizure of the property of the bankrupt, by which it is taken in custodia legis. In re Rodgers, 125 Fed. 169, 60 C. C. A. 567. Upon the selection and qualification of a trustee, all the rights, title, and interest of the bankrupt, as of the time of the filing of the petition in bankruptcy, in any property or property rights, by operation of law (section 70, Bankr. Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]), pass to and vest in the trustee, who then became the custodian for the court. The possession of the bankrupt, without more, is transferred to the trustee. No demand for the surrender and possession of the bankrupt's property is necessary. Indeed, he would stand in contempt of court, were he to assert the right to hold and possess the property against the trustee. He could not maintain trespass or replevin respecting any personal property owned by him prior to the adjudication in bankruptcy. No matter where the property of the bankrupt estate may have its situs, if within the United States, it passes to and vests in the trustee. By section 7, subsec. 8, of the bankrupt act (30 Stat. 548 [U. S. Comp. St. 1901, p. 3425]), on the adjudication the bankrupt is required to prepare and file schedules of all his property. This is all that is required of him as to property situate within the limits of the United States. As to property without the domain of the national act, section 7, subsec. 5, requires the bankrupt to execute transfers thereof to the trustee in bankruptcy.

It is thus made manifest that the criticism upon the petition of the trustee for an order of sale of the property in question, that it did not specifically aver that the property had been taken into the actual custody of the trustee, is without merit. As the fact appeared that the bankrupt owned the property at the time of the adjudication in bankruptcy, and as possession is presumptively with the owner, it has never been supposed by courts of bankruptcy that such petition should, ipsissimis verbis, aver that the trustee has the property in custody. The finding of the referee that the trustee had possession of the property, with or without evidence in pais, was justified as a conclusion of law from the facts apparent in the proceeding. The conclusion was in no degree contradicted by the fact that the bank held a mortgage on the property. The legal presumption was and is that, until entry by the mortgagee for condition broken, the right of possession and actual possession remained with the mortgagor.

The bankrupt act authorizes the court of bankruptcy to sell the personal property of the bankrupt freed from all liens, in the conservation of the interests of all creditors of the estate. This has been recognized under all the bankrupt acts as resting in the sound discretion of the court, exercising a jurisdiction equitable in its nature. In re Union Trust Company, 122 Fed. 937, 939, 940, 59 C. C. A. 461; In re Worland, 92 Fed. 893. When sold, any person claiming a preferred lien on the property can protect

himself by bidding thereon to prevent its sacrifice, and by apply-
ing to the court to disaffirm the sale. And after sale he can assert
his right to the proceeds before the referee, when and where his
claim can be heard, and its priority determined. In re Rochford,
124 Fed. 182, 59 C. C. A. 388; Bryan v. Bernheimer, 181 U. S. 188,
21 Sup. Ct. 557, 45 L. Ed. 814.

Counsel for the bank seem strangely affected with notions about
state lines under the bankrupt act. They challenge the right to
reach the bank in South Dakota by notice sent out by the referee
in Iowa, and the right of the court of bankruptcy in Iowa to draw
the bank from its residence in South Dakota to determine its rights
as a preferred mortgagee. Under the scheme of the bankrupt act,
the District Court of the domicile of the bankrupt takes exclusive
jurisdiction of the bankrupt and his property, wherever situated,
to administer it and distribute the proceeds pari passu among the
creditors according to their respective rights and priorities. Only
one court—the court making the adjudication—collects, marshals,
administers, determines priorities of the parties, and directs the
distribution of the assets. There are no such things in bankruptcy
proceedings as courts of primary and ancillary jurisdiction. The
court in this instance acquired jurisdiction as to the Granite City
Bank by giving the notice prescribed by section 58 of the act (30
Stat. 561 [U. S. Comp. St. 1901, p. 3444]), which in this case
was supplemented by notice served personally on the president
of the bank where the bank was located. The bank could have ap-
peared and contested at its pleasure the propriety of the referee
ordering the sale of the property free from all liens, and the Dis-
trict Court of Iowa, and it alone, could pass upon the validity of
the bank's claim to the proceeds of the sale of the property. In
re Kellog, 121 Fed. 333, 57 C. C. A. 547. The trustee was author-
ized to sell the property on the premises in South Dakota, or drive
it away, as the court might direct. The Granite City Bank could
not replevin it from the trustee. White v. Schloerb, 178 U. S. 542,
20 Sup. Ct. 1007, 44 L. Ed. 1183.

The action of the District Court is approved, and the petition
for review is dismissed.