### In re YOUNGSTROM.

(Circuit Court of Appeals, Eighth Circuit. April 23, 1907.)

### No. 45.

**1. BANKRUPTCY—PETITION TO REVISE—TIME.**

An order of a court of bankruptcy confirming an order of a referee denying a claim of certain exemptions asserted by the bankrupt's wife, not being an order made specially appealable by Bankr. Act July 1, 1898, c. 541, § 25a, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432], was reviewable on a petition to revise, presented within the six months generally limited for invoking the appellate jurisdiction of the Circuit Court of Appeals by Act Cong. March 3, 1891, c. 517, § 11, 26 Stat. 829 [U. S. Comp. St. 1901, p. 552].

**2. SAME—HOMESTEAD EXEMPTIONS.**

Mills' Ann. St. Colo. § 2133, provides that, to entitle any person to the benefit of a homestead exemption, he shall cause the word "homestead" to be entered in the margin of his record title to the same, which entry shall be signed and attested by the clerk and recorder of the county in which the premises are situated, and, if the property belongs to the husband, the entry may be made by the wife and vice versa. *Held,* that where the alleged homestead of a bankrupt had not been so designated on the record, when the bankruptcy petition was filed, at the time of the adjudication or the appointment and qualification of the trustee, the premises were not exempt under the state law, and could not be made exempt under Bankr. Act July 1, 1898, c. 541, §§ 6, 21, 70a, 30 Stat. 548, 552, 565 [U. S. Comp. St. 1901, pp. 3424, 3430, 3452], providing for the vesting of the bankrupt's property in the trustee and for the setting apart of exemptions.

**3. SAME—EFFECT OF ADJUDICATION.**

On a bankrupt's adjudication, the debtor's entire nonexempt estate is in legal contemplation brought into custodia legis and appropriated to the payment of his debts as effectually as if taken in execution or attachment, subject to the qualification, except as otherwise provided, that the property is appropriated in the same condition and subject to the same equities as when in the possession of the bankrupt.

**4. SAME—VESTING OF TITLE—TIME.**

On the appointment and qualification of a bankrupt's trustee, the title to the bankrupt's property is vested in him as of the date of the adjudication.

**5. SAME—EXEMPTIONS—STOCK IN TRADE.**

Mills' Ann. St. Colo. § 2562, exempts to a debtor who is the head of a family stock in trade not exceeding $200 in value, and section 2563 declares that, when the head of a family shall die, desert, or cease to reside with the same, the family shall be entitled to receive all the benefits and privileges conferred on the head of the family residing with the same. *Held,* that where a merchant became a bankrupt and absconded with the intention never to return and deserted his wife, who, with him, had constituted a family, she constituted what remained of the family, and was entitled to the $200 exemption from his stock in trade.

Petition for Revision of Proceedings of the District Court of the United States for the District of Colorado, in Bankruptcy.

Theodore H. Thomas (Thornton H. Thomas, on the brief), for petitioner.

Frank L. Grant (Lewis B. Johnson, Edwin A. Van Cise, Henry T. Rogers, Lucius M. Cuthbert, and Daniel B. Ellis, on the brief), for respondent.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

VAN DEVANTER, Circuit Judge. This is an original petition for the revision in matter of law of an order of the District Court confirming an order of a referee in bankruptcy denying a claim to certain exemptions asserted by the wife of a bankrupt.

Because it was not presented within 10 days after the making of the order sought to be revised, the respondent has moved to dismiss the petition; his contention being that our jurisdiction, under section 24b, of the bankruptcy act of July 1, 1898 (30 Stat. 553, c. 541 [U. S. Comp. St. 1901, p. 3432]), to revise in matter of law proceedings in bankruptcy can be invoked only within the ten days limited for taking appeals under section 25a. The decisions upon this and correlated questions have not been harmonious (see Act March 2, 1867, c. 176, 11 Stat. 518, 520, §§ 2, 8; Littlefield v. Delaware, etc., Co., Fed. Cas. No. 8,400; Bank v. Cooper, 20 Wall. 171, 177, 22 L. Ed. 273; In re Good, 39 C. C. A. 581, 99 Fed. 389; In re Worcester County, 42 C. C. A. 637, 641, 102 Fed. 808, 812; Steele v. Buel, 44 C. C. A. 287, 104 Fed. 968; In re New York Economical Printing Co., 45 C. C. A. 665, 106 Fed. 839; In re Groetzinger & Sons, 62 C. C. A. 124, 127 Fed. 124; In re Friend, 67 C. C. A. 500, 502, 134 Fed. 778, 780; s. c., 197 U. S. 620, 25 Sup. Ct. 797, 49 L. Ed. 909; In re Holmes, 73 C. C. A. 491, 142 Fed. 391), but, as the order sought to be revised is not one of those made specially appealable by section 25a, and as the petition was presented within the six months generally limited for invoking the appellate jurisdiction of a Circuit Court of Appeals (Act March 3, 1891, c. 517, 26 Stat. 829, § 11 [U. S. Comp. St. 1901, p. 552]), we think the motion to dismiss must be denied (Steele v. Buel, supra; In re Holmes, supra).

One of the exemptions asserted by the petitioner and denied by the order in question was a homestead exemption in certain real property in Colorado. The material portions of the statutes of the state creating such an exemption are as follows (Mills' Ann. St. §§ 2132, 2133, 2134, 2137):

"Sec. 2132. Every householder in the state of Colorado, being the head of a family, shall be entitled to a homestead not exceeding in value the sum of two thousand dollars, exempt from execution and attachment, arising from any debt, contract or civil obligation entered into or incurred after the first day of February, in the year of our Lord one thousand eight hundred and sixty-eight.

"Sec. 2133 (as amended). To entitle any person to the benefit of this act, he shall cause the word 'homestead' to be entered in the margin of his record title to the same, which marginal entry shall be signed by the owner mak-

ing such entry and attested by the clerk and recorder of the county in which the premises in question are situated, together with the date and time of day on which said marginal entry is so made; provided, that in case the husband is the owner of said homestead, the wife may cause such entry to be made and recorded, and the signature of the said entry by the wife shall have the same effect as if entered by the husband, the owner of the property. And, in case the wife is the owner of the homestead, and shall fail to make such homestead entry, the husband may cause the homestead entry to be made, and the signature thereof by him shall have the same effect as if the entry had been made by the wife, the owner of the property.

"Sec. 2134. Such homestead shall only be exempt as provided in the first section of this act, while occupied as such by the owner thereof, or his or her family."

"Sec. 2137 (as amended). That nothing in this act shall be construed to prevent the owner and occupier of any homestead from voluntarily mortgaging or otherwise conveying the same; provided, no such mortgage or other conveyance shall be binding against the wife of any married man who may be occupying the premises with him, unless she shall freely and voluntarily, separate and apart from her husband, sign and acknowledge the same, and the officer taking the acknowledgment shall fully apprise her of her rights and the effect of signing the said mortgage or other conveyance; and provided, further, that if the owner of said homestead be the wife of any married man who may be occupying the premises with her, no such mortgage or other conveyance shall be binding against said husband, unless he shall sign and acknowledge said mortgage or other conveyance."

The bankruptcy act invests the courts of bankruptcy with authority to "determine all claims of bankrupts to their exemptions" (section 2, cl. 11); requires the bankrupt to "prepare, make oath to, and file in the court within ten days, unless further time is granted, after the adjudication, if an involuntary bankrupt, and with the petition if a voluntary bankrupt, a schedule of his property, * * * and a claim for such exemptions as he may be entitled to" (section 7, cl. 8); directs trustees to "set apart the bankrupt's exemptions and report the items and estimated value thereof to the court as soon as practicable after their appointment" (section 47a, cl. 11); provides that "all property of the debtor conveyed, transferred, assigned or incumbered as aforesaid"— that is, "subsequent to the passage of this act and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay or defraud his creditors, or any of them"—"shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors" (section 67e); and also provides:

"Sec. 6. This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the State laws in force at the time of the filing of the petition in the state wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition."

"Sec. 21. * * * (e) A certified copy of the order approving the bond of a trustee shall constitute conclusive evidence of the vesting in him of the title to the property of the bankrupt, and if recorded shall impart the same notice that a deed from the bankrupt to the trustee if recorded would have imparted had not bankruptcy proceedings intervened."

"Sec. 70. (a) The trustee of the estate of a bankrupt, upon his appointment and qualification, * * * shall * * * be vested by operation of law

with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all * * * (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

So far as it is now material to state them, the facts found by the referee are these: For several years the bankrupt and his family, consisting of himself and his wife, the present petitioner, had occupied the premises in controversy as a home. He was the owner and his title had been duly recorded. Shortly before the filing of the creditor's petition, upon which he was adjudged a bankrupt, he suddenly left the state with the apparent intention of never returning and of deserting his wife. She continued to occupy the premises as a home. Neither he nor his wife caused the word "homestead" to be entered in the margin of his record title until after the time of the filing of the petition in bankruptcy, after he had been adjudged a bankrupt, after the appointment and qualification of the trustee, and after the trustee had caused the premises to be inventoried and appraised and was proceeding to sell them under an order of the court; but before the day fixed for the sale the wife caused such an entry to be made and thereby effectually designated the premises as a homestead, if she could do so at that time. She thereupon presented to the referee a petition, praying that the trustee be directed to set apart the premises as an exempt homestead.

As was said by this court in the case of In re Nye, 66 C. C. A. 139, 133 Fed. 33:

"The express terms of the bankruptcy act are such that it does not affect the allowance to bankrupts of the exemptions which are prescribed by state laws, and does not invest the trustee with the title to property which is exempt. * * * The provisions authorizing bankrupt courts to determine all claims of bankrupts to their exemptions, and directing trustees to set apart the bankrupt's exemptions, * * * disclose no purpose to render the exemptions less beneficial than intended by the state laws, but are in harmony with the purpose of the act, disclosed in other provisions, to make those laws the measure of the extent and nature of the exemptions, as well as of the right to them."

The present case, however, presents the question: At what point of time must the bankrupt be entitled to a particular exemption under the state laws to have it allowed and set apart under the saving and protecting provisions of the bankruptcy act? The answer must, of course, be found in that act. Naturally, it would be expected that this point of time would not be later than the date as of which the general estate of the bankrupt is wrested from his dominion and vested in his trustee for the benefit of the creditors. And such, we think, is actually and plainly the effect of the provisions before set forth. Thus it is declared, in section 6, that the exemptions to be allowed are those prescribed by the state laws in force "at the time of the filing of the petition," and, in section 70a, that, upon his appointment and qualification, the trustee shall be vested, by operation of law, with the title of the bankrupt, "as of the date he was adjudged a bankrupt," to all property, not exempt, which "prior to the filing of the petition" he could by any means have transferred, or which

might have been levied upon and sold under judicial process against him. Other provisions strengthen this view, notably the requirement of section 7, cl. 8, that a voluntary bankrupt shall claim his exemptions at the time of filing his petition and that an involuntary bankrupt shall claim them within 10 days after the adjudication, unless further time is granted. Indeed, we think the statute admits of doubt only in respect of whether the right to any claimed exemption is to be determined as of the time of the filing of the petition or as of the time when the debtor was adjudged a bankrupt. That it is to be determined as of the earlier date is suggested by those provisions of section 6, section 7, cl. 8, and section 70a, cl. 5, which make the time of the filing of the petition of special significance, and that it is to be determined as of the later date is suggested by the provision in section 70a that the trustee shall be vested with the title of the bankrupt as of the date he was adjudged a bankrupt. But, as the facts of the present case do not require that we determine this matter, we pass it, observing, first, that the present act differs from that of 1867 in that by section 14 of the latter the trustee became vested with the title of the bankrupt as of the date of the commencement of the proceedings; and, second, that the Circuit Court of Appeals of the Seventh Circuit seems to regard the date when the debtor was adjudged a bankrupt as controlling, as is shown in Re Mayer, 47 C. C. A. 512, 521, 108 Fed. 599, 608, where it was said by Judge Woods:

"The intention of this statute is, without doubt, that the creditors shall have all of the estate of a bankrupt which is not exempt, and that the bankrupt shall have the exemptions allowed by the law of his domicile determined by relation to the date of adjudication."

Although dissenting from the judgment in that case, Judge Jenkins also said (47 C. C. A. 528, 108 Fed. 615):

"The general purpose of the bankruptcy act is that the bankrupt, surrendering his estate not exempt, should be discharged from his debts then existing, and should retain the property exempted and allowed to him by the law of the state of his domicile. The creditors are to have all of the estate not exempt, and must surrender all claims against the bankrupt if he shall receive his discharge. The title to the property thus reserved for the benefit of the creditors is vested in the trustees as of the date he was adjudged a bankrupt. That date is the 'dead line,' separating the past and the future. All that the bankrupt had on that date, except property exempt, goes to his creditors."

We conclude that a claimed exemption otherwise recognized by the state laws, but to which the bankrupt had not become entitled at the time of the filing of the petition or at the time he was adjudged a bankrupt, is not within the saving and protecting clauses of the bankruptcy act, and cannot be allowed or set apart thereunder.

Was the bankrupt or his family entitled to the homestead exemption here asserted at either of these times? The answer must be found in the state statutes before set forth and the decisions of the Supreme Court of the state interpreting them. Repeated decisions of that court are to the effect that the purpose of these statutes is to preserve the home for the family, and, to that end, to protect it from alienation by one spouse without the concurrence of the other, and also from execution or attachment arising from any debt, contract, or civil obligation;

that no one is entitled to the protection and benefits of these statutes until the premises are designated as a homestead upon the margin of the record title as prescribed in section 2132, supra; and that this designation is effective only from the time it is made, and has no retrospective operation. Drake v. Root, 2 Colo. 685; Wells v. Caywood, 3 Colo. 487; Barnett v. Knight, 7 Colo. 365, 3 Pac. 747; Jones v. Olson, 17 Colo. App. 144, 67 Pac. 349; Goodwin v. Colorado Mortgage Investment Co., 110 U. S. 1, 5, 3 Sup. Ct. 473, 28 L. Ed. 47. In the last case it was said by Mr. Justice Harlan:

"No one is entitled to the benefits of the foregoing statutory provisions unless the word 'homestead' be entered upon the margin of the recorded title of the premises occupied as a homestead. Such are the express words of the statute, and there is no room left for construction. We are not at liberty to say that the Legislature intended actual notice to creditors of the occupancy of particular premises as a homestead to be equivalent to the entry on the record of title of the word 'homestead.' The requirement that the record of the title shall show that the premises are occupied as a homestead before any person can become entitled to the benefits of the statute is absolute and unconditional."

The premises in controversy were not so designated until after the time of the filing of the petition and after the time when the owner was adjudged a bankrupt, so neither he nor his family was entitled to a homestead exemption therein at either of these times.

The Colorado courts hold that when premises, otherwise within the homestead statutes of the state, are designated as a homestead upon the margin of the record title, after a judgment for the payment of money against the owner has become a general lien upon his realty under a state law, the designation exempts such premises from the subsequent levy of an execution issued upon the judgment (Woodward v. People's National Bank, 2 Colo. App. 369, 31 Pac. 184; Weare v. Johnson, 20 Colo. 363, 38 Pac. 374); and from this it is argued that the wife's designation of the premises in controversy as a homestead was effective, because it was made before they were sold by the trustee to satisfy the claims of the creditors. We cannot accede to the contention for these reasons: In Colorado, as is generally true, a judgment for the payment of money is enforced by execution, and the cases cited hold nothing more than that under the terms of section 2132, supra, an execution cannot be levied upon a homestead which is exempt at the time. This is shown by the following extract from the opinions:

"The homestead is exempt from 'execution or attachment.' The property in question not having been subjected specifically to the judgment lien by the levy of an execution before it was withdrawn as a homestead, it was exempted from the levy of the execution."

It is not material that such a judgment is by statute made a general lien upon the realty of the debtor, for that does not wrest from him the title, or bring the property into custodia legis, or dispense with an execution as the means of subjecting it to the satisfaction of the judgment. But under the bankruptcy act, when a debtor is adjudged a bankrupt, his entire estate, in so far as it is not exempt, is in legal contemplation as effectually brought into custodia legis and appropriated to the payment of his debts as if it were taken in execution or at-

tachment, subject only to the qualification that, where the act does not specially provide otherwise, as it does in respect of cases affected by fraud, the estate is brought into custodia legis and appropriated in the same plight and condition that the bankrupt himself held it, and subject to all the equities imposed upon it in his hands (In re Pekin Plow Co., 50 C. C. A. 257, 259, 112 Fed. 308, 310; In re Rodgers, 60 C. C. A. 567, 578, 125 Fed. 169, 180; In re Granite City Bank, 70 C. C. A. 316, 137 Fed. 818; State Bank of Chicago v. Cox, 74 C. C. A. 285, 143 Fed. 91; In re Schermerhorn, 76 C. C. A. 215, 145 Fed. 341; In re Blake [C. C. A.] 150 Fed. 279; Mueller v. Nugent, 184 U. S. 1, 14, 22 Sup. Ct. 269, 46 L. Ed. 405; Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986; Thompson v. Fairbanks, 196 U. S. 516, 526, 25 Sup. Ct. 306, 49 L. Ed. 577; York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782); and upon the appointment and qualification of the trustee the title is vested in him, as of the date of such adjudication, quite as effectually as if the debtor had conveyed it to him on that date. Indeed, the bankruptcy proceedings have a further effect, for as was said in respect of the act of 1867 in Bank v. Sherman, 101 U. S. 403, 406, 25 L. Ed. 866:

"The filing of the petition was a caveat to all the world. It was in effect an attachment and injunction. Thereafter all the property rights of the debtor were ipso facto in abeyance until the final adjudication. If that were in his favor, they revived and were again in full force. If it were against him, they were extinguished as to him, and vested in the assignee for the purposes of the trust with which he was charged. The bankrupt became, as it were, for many purposes, civiliter mortuus. Those who dealt with his property in the interval between the filing of the petition and the final adjudication did so at their peril. They could limit neither the power of the court nor the effect of the final exercise of its jurisdiction. With the intermediate steps they had nothing to do. The time of the filing of the petition and the final result alone concerned them."

And the applicability of what was thus said to the present act was expressed in this way in Mueller v. Nugent, 184 U. S. 1, 14, 22 Sup. Ct. 269, 275, 46 L. Ed. 405:

"It is as true of the present law as it was of that of 1867 that the filing of the petition is a caveat to all the world, and in effect an attachment and injunction (Bank v. Sherman, 101 U. S. 403, 25 L. Ed. 866); and on adjudication title to the bankrupt's property became vested in the trustee (sections 70, 21c) with actual or constructive possession, and placed in the custody of the bankruptcy court."

True, the effect of this language has been somewhat qualified by the decisions in Hewit v. Berlin Machine Works, Thompson v. Fairbanks, and York Mfg. Co. v. Cassell, supra, but the qualification does not consist in giving effect to proprietary acts of the bankrupt committed after the sequestration of his property, but only to such as were committed prior to the filing of the petition and gave rise to rights in third persons which were valid as between themselves and the bankrupt, and which they were lawfully entitled to assert when the trustee's title accrued, the ruling, as qualified, being that the trustee, in cases unaffected by fraud, takes the property in the same plight and condition that the bankrupt held it, and therefore subject to the rights of such third persons, although a creditor levying an execution or attachment thereon would take it discharged of such rights.

At the time of the filing of the petition and at the time the debtor was adjudged a bankrupt, as also at the time of the appointment and qualification of the trustee, the premises in controversy had not been designated as a homestead. In the absence of such a designation, they were not exempt under the state law. Prior to the filing of the petition the bankrupt had full power to dispose of them, and they could have been levied upon and sold under judicial process against him. They, therefore, came plainly within the terms of section 70a as property which vested in the trustee, by operation of law, upon his appointment and qualification, so the claim to a homestead exemption was rightly denied.

The order sought to be revised also confirmed the denial of a stock in trade exemption of $200 asserted by the wife under the following statutes (Mills' Ann. St. §§ 2562, 2563):

"Sec. 2562. The following property, when owned by any person being the head of a family and residing with the same, shall be exempt from levy and sale upon any execution or writ of attachment, or distress for rent, and such articles of property shall continue exempt while the family of such person are removing from one place of residence to another within this state. * * * Sixth, The tools and implements, or stock in trade, of any mechanic, miner or other person, used and kept for the purpose of carrying on his trade or business not exceeding two hundred dollars in value.

"Sec. 2563. Whenever in any case the head of a family shall die, desert or cease to reside with the same, the said family shall be entitled to and receive all the benefits and privileges which are in this chapter conferred upon the head of a family residing with the same."

The bankrupt had been a merchant and part of his estate consisted of a stock in trade used and kept for the purpose of carrying on his business, the stock exceeding $200 in value. As before stated, the referee found that shortly before the filing of the petition the bankrupt suddenly left the state with the apparent intention of never returning and of deserting his wife, who with him had constituted the family. The only reason assigned or advanced for the denial of this exemption is that one person, such as the wife here, could not be "the said family" within the meaning of section 2563. It is quite true that a person residing alone is not, generally speaking, a family, but that does not answer the question here presented. Without doubt, there was a family prior to the husband's desertion. Of that family he was the head and so was entitled, under section 2562, to an exemption of $200 in his stock in trade. We think the other section in providing that, whenever the head of a family shall die, desert, or cease to reside with the same, "the said family" shall succeed to the right of exemption, plainly means that this right shall pass to the remaining portion of the family; that is, to the family as it was before, but minus the head, whether what remains be one or several persons. In this view the wife, as the remaining portion of the family, was entitled to this exemption.

The case is remanded to the District Court, with a direction to modify its order to the extent of allowing the exemption in the stock in trade.