### In re WALSH BROS.

(District Court, N. D. Iowa, E. D. March 3, 1908.)

### No. 596.

1. BANKRUPTCY—LIENS—ATTACHMENT—VACATIONS.
   An adjudication in bankruptcy discharges any attachment pending against property of the bankrupt, and releases the property therefrom, unless the bankruptcy court orders that the lien be preserved for the benefit of the bankrupt's estate, under the express provisions of Bankr. Act July 1, 1898, c. 541, § 67f, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3450].

2. SAME—SEIZURE OF PROPERTY.
   An adjudication in bankruptcy, after the attachment of certain of the bankrupt's property, operates as a seizure of the property by the bankruptcy court from the date of the adjudication, and on the appointment and qualification of a trustee the title and right thereto passes to the trustee, who becomes the legal custodian of the property until it shall be awarded to whomsoever it rightfully belongs.

3. SAME—POSSESSION OF SHERIFF.
   Where a sheriff, after having attached property of a bankrupt, was informed of the adjudication and requested by the referee to hold the property for the referee until a trustee could be appointed, the attachment having been dissolved by the adjudication, the sheriff was in possession as custodian of the bankruptcy court, so that a seizure from the sheriff

on writs of replevin constituted a direct interference with the court's custody of the property.

4. SAME—CONTEMPT.

Where attorneys for the sellers of personal property to a bankrupt had knowledge of the bankruptcy adjudication against the buyer at the time they sued out writs of replevin, under which they took the property from the possession of the sheriff, who was holding it under attachment, which had been vacated by the bankruptcy adjudication, and such attorneys, claiming that their clients were entitled to rescind the sales for fraud, shipped the property out of the state and the jurisdiction of the bankruptcy court, they were guilty of contempt equally with their clients, which could be purged only by their returning the property, paying its value to the trustee, or executing bonds to pay the value to the trustee, on its being finally determined that the trustee was entitled to the property.

In Bankruptcy. On citation for contempt.

H. J. Fitzgerald, for trustee.

Ellis & Ellis and Frank Lingenfelder, pro se.

REED, District Judge. Walsh Bros., a copartnership engaged in the buying and selling of farm implements at Charles City, Floyd county, this state, was adjudged bankrupt by this court January 17, 1908, upon its own petition, and the matter was referred to the proper referee the same day. December 18th, prior to the bankruptcy, a writ of attachment was sued out of the district court of Iowa in and for Floyd county against the bankrupt and levied upon its property by the sheriff of that county, and he held it under that writ at the time of the adjudication in bankruptcy. The referee received the record in the bankruptcy proceedings January 18th, and on that day informed the sheriff of the bankruptcy, and requested him to hold the property which he had levied upon for him (the referee) until a trustee for the bankrupt estate could be appointed. January 22d, the Moline Plow Company, an Illinois corporation, by Ellis & Ellis, its attorneys at Charles City, sued out of the state court in and for Floyd county a writ of replevin for a part of the property seized by the sheriff, upon the ground that it had been sold by it to the bankrupts upon their false representations made to the company to induce such sale. The writ, being against the sheriff, was placed in the hands of the coroner of Floyd county, pursuant to the statute of the state, for service, who thereunder took from the sheriff property of the bankrupts so held by him of the value of some $800, and on the same day (January 22d) delivered it to the Moline Plow Company, on board the cars of the Chicago, Milwaukee & St. Paul Railway Company, at its station in Charles City, and it was shipped out of the state. January 24th the J. I. Case Plow Works, a Wisconsin corporation, and the Staver Carriage Company, an Illinois corporation, by Frank Lingenfelder, an attorney at Charles City, sued out of the state court separate writs of replevin for other goods so held by the sheriff, upon the grounds that they severally were induced by the fraud and misrepresentations of the bankrupts to sell them such goods. The J. I. Case Plow Works further alleged that it sold the goods to the bankrupts under a written contract whereby it reserved the title to the same until the purchase price should be paid. Each of the writs was delivered to the coroner for service, who upon the

159 F.—36

same day (January 24th) took from the sheriff property of the alleged value of some $1,325, and delivered it to the respective plaintiffs in the replevin suits, on board the cars of the Chicago, Milwaukee & St. Paul Railway Company, in Charles City, and such property also was at once shipped out of the state. Ellis & Ellis and Frank Lingenfelder, attorneys for the respective plaintiffs in the replevin suits, and the coroner, were each informed of the bankruptcy proceedings before the replevin suits were commenced or the writs of replevin served by the coroner, February 3d a trustee was appointed for the bankrupt estate, who duly qualified as such, and on February 10th presented to this court petitions reciting the foregoing facts, and asked for such orders as would secure the return to the trustee of the property, or its value, so taken from the custody of the court and removed from the state. A citation was accordingly issued to the several plaintiffs in the replevin suits, their attorneys, and the coroner to appear in court upon a day certain and show cause why they should not return to the trustee the property so taken and be adjudged in contempt for seizing the same and removing it from the state, which citation was duly served upon the attorneys and coroner in this district, and upon the plaintiffs in the replevin suits in Illinois and Wisconsin, respectively. Ellis & Ellis, Lingenfelder, and the coroner have appeared pursuant to such citation and filed separate answers for themselves only, in which they respectively deny any intent or purpose on their part of wrongfully interfering with the property in the custody of this court, and aver that the property, when seized by the coroner, was not in its custody or of any of its officers, but was in the exclusive custody and control of the sheriff under the writ of attachment. They further aver that the property taken under the writs of replevin was not the property of the bankrupts, but belonged to the respective plaintiffs in the replevin suits, and that the title thereto did not pass to the trustee in bankruptcy.

It is urged that, if the plaintiffs in the several replevin suits sold the property replevined by them respectively to the bankrupts, under such circumstances as will entitle them to rescind the sales and reclaim the property, the title to such property would not pass to the trustee in bankruptcy. The merits of this contention will not be heard or considered upon this hearing. It is admitted that the property had been delivered to the bankrupts pursuant to contracts of purchase thereof, and was in their possession when it was seized by the sheriff under the attachment, and was in his custody at the time of the adjudication in bankruptcy. The adjudication in bankruptcy discharged the attachment and released the attached property therefrom, unless the court of bankruptcy shall order the lien preserved for the benefit of the bankrupt estate. Bankr. Act July 1, 1898, c. 541, § 67f, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3450]. The adjudication also operated as a seizure of the property, and it was in custodia legis from that time; and upon the appointment and qualification of the trustee the title and right thereto passed to the trustee, who then became its legal custodian for the court of bankruptcy, and that court will award it to whomever it rightly belongs. White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183; In re Granite City Bank, 137 Fed. 818, 70 C. C. A. 316. The seizure of the property upon the writs of replevin was

therefore a direct interference with the rightful custody of the court of bankruptcy and wholly unauthorized. White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. R. A. 1183, above.

The sheriff in an affidavit says that he was informed by the referee of the adjudication in bankruptcy and requested by him to hold the property for the referee until a trustee could be appointed, but that he continued to hold it under the writ of attachment. If he did continue to so hold it, he held it wrongfully; for the attachment was dissolved by the adjudication, and he could not thereafter rightly hold it, except for the referee or the court of bankruptcy. It is wholly immaterial whether or not he agreed with the referee to so hold it. If he remained in possession of the property, he could rightly do so only as custodian for the court of bankruptcy. It is clear, however, that he retained it at the request of the referee, and was therefore in fact the custodian of it for the time being for the court of bankruptcy, and the taking of the property from him was the taking of it directly from that court.

It is admitted in the answers of the attorneys and coroner that each was informed by the referee of the bankruptcy before the replevin suits were commenced. They therefore had actual as well as constructive knowledge thereof, and must be held responsible for the seizure and removal of the property from the district. The haste with which the property was placed upon the cars and shipped from the state leaves no room to doubt that it was the deliberate intention of the several plaintiffs in the replevin suits, and their attorneys and agents, to remove it beyond the territorial jurisdiction of the court before a trustee could be appointed, and thus attempt to evade the effect of the bankruptcy proceedings, and deprive this court of its rightful jurisdiction over such property. The attempt will not be permitted to succeed, and the court will take such measures as will save to the creditors all rights under the bankruptcy proceedings.

Messrs. Ellis & Ellis are attorneys of long experience and practice in the state courts, and one of that firm appears and states that they were employed prior to the bankruptcy proceedings to recover the property from the bankrupts, and that upon the facts as placed before them they in good faith believed that the property was obtained from the Moline Plow Company upon such false representations by the bankrupts as would entitle that company to rescind the sale and reclaim the property, and that they believed the only way to protect and save the rights of that company was by the replevin suit. Upon being informed that the orderly procedure would have been to present the claims of his client to the court of bankruptcy, and that that court would fully protect the rights of his client, he at once replied that, if they had so known or understood that the bankruptcy court had jurisdiction to do so, the replevin suit would not have been commenced, and offered to deposit with the clerk the value of the property taken by the Moline Plow Company, or give a sufficient bond to pay to the trustee its value in the event that the court of bankruptcy upon a hearing upon the merits shall finally determine that that company is not entitled to rescind the sale and reclaim the property. There is no reason to doubt the sincerity of the statement and good faith of the offer. The at-

torney for the plaintiffs in the other replevin suits makes substantially the same statements that counsel for the Moline Plow Company make, and expresses a willingness to give a like bond for the return of the property taken under their writs, or the payment of its value.

It is obvious that the coroner acted under the direction of these attorneys in seizing this property under the writs of replevin. The attorneys will therefore be held personally responsible, equally with their clients, for its seizure and removal from the district, and are required to return it, or pay its full value to the trustee, within 10 days. But they may execute within such 10 days, or cause to be executed by their respective clients, to the trustee in bankruptcy of this estate, separate bonds for the full value of the property taken or caused to be taken by each upon the respective writs of replevin, with resident sureties to be approved by the clerk of this court, conditioned to pay to such trustee the full value of the property taken or caused to be taken by them, respectively, upon said several writs of replevin, upon its being finally determined by the court of bankruptcy that the trustee is or was entitled to such property, which bonds will be accepted in lieu of the property.

Upon the return of the property, or payment of such value, or the execution of such bonds and approval thereof by the clerk, the Moline Plow Company, the J. I. Case Plow Works, and the Staver Carriage Company may then present to the referee within 10 days thereafter their respective claims to the property taken by them upon such writs of replevin. The trustee will seasonably answer such claims, and the referee will proceed to hear and determine them upon their merits and make such orders as the testimony warrants, which orders may be reviewed by either claimant or the trustee in the usual way. The cost of this proceeding will be paid, one-third by the attorneys for the Moline Plow Company, or by said plow company, and two-thirds by the attorney for the other plaintiffs in the replevin suits, or by said plaintiffs, and will be taxed by the clerk accordingly. Upon payment of such costs this proceeding may be dismissed. It will be continued and held open, however, for such other or further orders as may be necessary, which may be applied for at any time.

It is ordered accordingly.