**In the Matter of Alex EDELMAN, Bankrupt.**

**No. 54703.**

United States District Court E. D. New York.

March 3, 1959.

See also 164 F.Supp. 728.

Joseph D. Stim, New York City, for petitioning trustee.

Samuel B. Weingrad, New York City, for bankrupt.

BRUCHHAUSEN, District Judge.

The trustee herein petitions for a review of the order of Hon. Sherman D. Warner, Referee in Bankruptcy, dated January 12, 1959.

The Referee denied the trustee's application for the turnover of a bank deposit and incidental relief.

Max Edelman was adjudicated a bankrupt on March 17, 1958. The trustee's application for turnover originated with an order to show cause, dated June 26, 1958, returnable on July 17, 1958. The Referee reports that no evidence was submitted to him other than the petition of the trustee, attached to the order to show cause, and the answering affidavit of Annette Edelman, the wife of the bankrupt, and that the trustee did not request an opportunity to offer additional evidence.

In substance, the trustee alleged in his petition that on or about October 30, 1956, Sarah Levine, the sole creditor of the bankrupt, obtained a judgment against him for the sum of $8,231.04, thus rendering him insolvent; that, in

his schedules, he listed no assets other than exempt life insurance policies; that at a meeting of creditors held on April 18, 1958 he testified that his wife had an account in the Long Island National Bank, wherein she deposited moneys he gave her from his income. The trustee also submitted a transcript of the account, showing that it was in the names of Annette Edelman or Helen Simon; that the balance on deposit on March 17, 1958, the date of the adjudication, was $213.77 and the balance therein on May 2, 1958 amounted to the sum of $133.67.

In the answering affidavit of said Annette Edelman, she averred that part of the money deposited belonged to her mother, Helen Simon, that the remainder came from salary earned by her husband, claimed to be exempt from execution; that the husband's salary was subject to a garnishee execution and all of the moneys had been earned during the pendency of supplementary proceedings commenced by the judgment creditor about a year and a half prior to March 17, 1958, and that she used the said sum of $213.77 for household needs and expenses.

It is not disputed that at the time of the trustee's application for turnover of the bank deposit, the balance amounted to $133.67. The evidence is in conflict as to whether all or part thereof belonged to Helen Simon. None of it was in the possession of the bankrupt. Under these circumstances, the Referee would not be warranted in summarily directing a turnover to the trustee of the balance on deposit. His ruling to that effect is upheld. See In re Brockton Ideal Shoe Co., 2 Cir., 202 F. 199.

The trustee, in addition to turnover, requested the Referee to adjudicate that the said balance was the property of the bankrupt and therefore an asset of the estate. Section 2, sub. a(11) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(11) empowers the bankruptcy court to determine all claims of bankrupts to their exemptions.

A statutory exemption for the benefit of a family may be claimed by the wife of the bankrupt. In re Youngstrom, 8 Cir., 153 F. 98; In re Luby, D.C., 155 F. 659; In re Maxson, D.C., 170 F. 356; In re Burnham, D.C., 202 F. 762.

It is not disputed that the excess, if any, of the moneys on deposit over and above the part belonging to Helen Simon, represented salary of the bankrupt turned over by him to his wife.

The Referee held such salary was exempt under Section 684 of the New York Civil Practice Act. That section permits a judgment creditor to garnishee ten percent of a debtor's salary. Such a garnishee was in effect at the time of the adjudication of bankruptcy herein. The Referee ruled that the remaining ninety percent was exempt.

Section 684 of the said Act permits a judgment debtor to garnishee the salary of a debtor to the extent of ten percent thereof. The section makes no reference to the disposition of the remaining ninety percent of salary. However, Section 793 does provide the creditor with a remedy leading to a possible application of the said remaining salary towards liquidation of the judgment. It authorizes a judgment creditor to apply for a court order, directing the payment to him in installments of the debtor's income, however and whenever earned and acquired, as the Court in its discretion may deem proper provided however that the Court in determining whether such installments should be ordered shall take into consideration the following factors, viz.:

1. The reasonable requirements of the judgment debtor and his family, if dependent upon him.

2. The ten percent payments, provided for in Section 684.

It is apparent under Section 793 that the question of the disposition of the debtor's remaining ninety percent of salary is not determinable until such time as the issue is raised and the Court has evidence presented to it as to the amount thereof reasonably required for the debtor and his family. The amount, if any, to be paid to the judgment creditor is dependent upon such adjudication.

While Sections 684 and 793 seem to deal with the application of current and

future salary, Section 792(c) also pertains to salary, already earned at the time of the institution of supplementary proceedings. In substance, it provides that such of the debtor's earnings for personal services, rendered within sixty days prior to the institution of supplementary proceedings or thereafter as the Court shall determine to be necessary for the reasonable requirements of the debtor and his family, if dependent upon him, shall not be subject to seizure by the judgment creditor.

In the case of Hancock v. Sears, 93 N. Y. 79, 81, the Court considered the questions of when and under what circumstances a debtor should claim the exemption under Section 792(c). The then statute was similar to the present statute. The debtor in that case was charged with contempt in a supplementary proceeding. It developed that in spite of a restraining order he spent his salary and in justification pleaded that he used it in support of his family claiming the statute accorded him exemption from seizure by the creditor. The Court therein wrote:

> "Nor was it necessary for the debtor to bring the facts constituting exemption to the attention of the judge or court, before applying his earnings to relieve the necessities of his family. Such a course would cause delay, perhaps suffering to his family, and we think the intent of the statute is answered by putting upon the debtor the burden of justifying its use when called upon to transfer the money to a sheriff, or a receiver."

The cases of DeLuca v. O'Kelly, 266 App.Div. 859, 42 N.Y.S.2d 468 and Gill v. Schwartz, 273 App.Div. 606, 78 N.Y.S. 2d 721, cited by the trustee, involved current earnings and are not helpful in construing Section 792. They relate back to the case of Hayward v. Hayward, App.Div. 1st Dept., 178 App.Div. 92, 164 N.Y.S. 877, which also pertained to current earnings.

The case of Sverd v. Mostel, App.Div. 1st Dept., 283 App.Div. 128, 126 N.Y.S. 2d 426, 428, is in point. It appeared that the debtor had turned over his salary to his wife; that she deposited it in a bank; that a restraining order was served upon her; that in disregard thereof, she spent the money; that she was cited for contempt; that at the hearing of the contempt charge, she testified that she expended the money for family support and claimed exemption under Section 792(c). In its majority opinion, the Court affirmed the contempt order upon several grounds, i. e., that she ignored judicial process and failed to apply to the court for determination of the question of exemption, also that she failed to support her contention that the fund was the only one available for family needs. In that connection the Court, in that opinion, wrote:

> " * * * (she) was nevertheless under some obligation to apply to the court to release the fund by appropriate application at an appropriate time; and she was not at liberty to disregard the restraint and dispose of the fund as though the subpoena had no significance. * * *
>
> " * * * The debtor, or a third party who seeks to rely for his protection on the exemption of the debtor's property in his hands must satisfy the court of the necessity for the use of the funds for which he seeks the statutory exemption * * .
>
> "The third party (the debtor's wife) has not fairly established on this record that the money which she spent was the only financial resource that was available for necessities or could have been made available to debtor in the light of his general earnings before and after this period."

In a dissenting opinion Mr. Justice Botein said:

> "A heavy burden of justifying the expenditures in issue rests upon the third party, and the risk she courted in making such expenditures was correspondingly great. She must not only satisfy the court that

the moneys she expended were for necessaries as contemplated by Section 792, C.P.A.; but she must also show that these funds were not received or expended by her as part of any scheme to divert funds that would otherwise be applied towards satisfaction of the judgment. Although she moved promptly to vacate the subpoena (which motion was denied) she could have reduced her risk by asking specifically for a ruling on the status of the funds in her possession * * *.

"The cases cited by the creditor in support of her contention that the funds in issue were previously earned and therefore not exempt are not applicable, since it appears that the moneys were for personal services rendered 'within sixty days next before the institution of the special proceeding, or rendered thereafter'. Section 792, C.P.A."

The dissenting Judges expressed the view that she should not be held in contempt "for in effect carrying out the very purpose for which the statutory exemption was created."

Under all of the circumstances, the findings and order of the Referee are confirmed.