**In the Matter of Noel SIMON, Bankrupt.**
**No. 54682.**

United States District Court
E. D. New York.
July 24, 1959.

See also 167 F.Supp. 214.

Samuel B. Weingrad, New York City, for bankrupt.

Joseph D. Stim, Plainview, for trustee.

RAYFIEL, District Judge.

This is a petition to review an order of Hon. Sherman D. Warner, Referee in

Bankruptcy, dated March 10, 1959, wherein he denied the bankrupt's discharge.

The trustee herein filed fourteen specifications of objection to the discharge. On the hearing held by the Referee five specifications, numbered 3, 7, 10, 11 and 14, were withdrawn by the trustee; five specifications numbered 1, 2, 4, 8 and 9, were dismissed by the Referee on motion of the bankrupt, and the following specifications were sustained:

"5. That the bankrupt committed an offense punishable by imprisonment as provided under Title 18, United States Code, § 152 in that he knowingly and fraudulently concealed from the Trustee in Bankruptcy and the creditors in the above entitled bankruptcy proceeding property belonging to the estate of the bankrupt, to wit 3 checks given to Bankrupt and payable to him by Tangel Material Handling Equipment, Inc., each in the amount of $100.00 and dated respectively March 24, 1958, April 2, 1958 and April 11, 1958 and given to the Bankrupt on or about the dates of the said checks totalling the sum of $300.00 and representing commissions earned by the Bankrupt prior to March 11, 1958, the date the Bankrupt filed his petition in bankruptcy.

"6. That the Bankrupt on or about March 24, 1958, on or about April 2, 1958 and on or about April 11, 1958 transferred and concealed certain of his property with intent to hinder, delay or defraud his creditors, specifically: the Bankrupt on or about each of the above referred to dates transferred to his wife checks from Tangel Material Handling Equipment, Inc. each in the sum of $100.00 totaling in all $300.00 representing commissions earned by Bankrupt with intent to hinder, delay or defraud his creditors."

"12. That the Bankrupt committed an offense punishable by imprisonment as provided under Title 18 U.S.C. § 152 in that he did knowingly and fraudulently make a false oath on or about March 7th, 1958 in the above entitled bankruptcy proceeding in that in answer to the following question in the Statement of Affairs filed with his petition in bankruptcy he gave the following answer:

" '9. Loans repaid.

" 'a. What repayments of loans have you made during the year immediately preceding the filing of the original petition herein? (Give the name and address of the lender, the amount of the loan and when received, the amount and date when repaid, and, if the lender is a relative, the relationship.) No.'

In truth and fact the Bankrupt had during the year immediately preceding the filing of the original petition herein repaid loans made by Queens National Bank at the rate of $110.00 per month approximately by depositing his monies in an account in his wife's name and causing his wife, Ferne Simon, to repay said loan and in truth and fact the Bankrupt during that period repaid a loan made to him by Valley Stream National Bank at the rate of approximately $9.00 per month by depositing his monies in the account in his wife's name Ferne Simon, and causing his wife to make such repayments.

"13. That the Bankrupt subsequent to the first day of the twelve months immediately preceding the filing of petition of Bankruptcy, transferred, removed, and concealed or permitted to be concealed his property with intent to hinder, delay, and defraud his creditors in that during the period between August, 1957 and December, 1957, the Bankrupt concealed and transferred monies loaned or advanced to him by his employer, Tangel Material Handling Equipment, Inc. totaling approximately $511.00 by causing approximately $440.00 of said amount to be paid to Queens National Bank as part payment of an automobile owned by the Bankrupt's wife, Ferne Simon, and causing the balance of the said monies to be used in payment of insurance on the said automobile owned by the Bankrupt's wife, Ferne Simon."

The record reveals that the bankrupt was employed as a salesman by the Tangel Material Handling Equipment, Inc.

until February 4, 1948 at a salary plus commission. John Tangel, the President of that company, testified that the bankrupt earned approximately $150 per week, and that his earnings for the week ending February 4, 1958, when he left its employ, were $200. The bankrupt then entered the employ of White Machinery Company, Inc., by which he was employed when he filed his petition in bankruptcy on March 11, 1958. On March 24, 1958, April 2, 1958 and April 11, 1958 he received three checks from his former employer, Tangel Material Handling Equipment, Inc., each in the sum of $100, which, according to Mr. Tangel, represented commissions due him on jobs which he had sold prior to leaving its employ on February 4, 1958. The bankrupt testified that he turned these checks over to his wife, who deposited them in her bank account. These three checks are the subject of the Trustee's specifications numbered 5 and 6.

The bankrupt takes inconsistent positions with regard to them. On the one hand, he claims that they are exempt from attachment by his creditors pursuant to § 792(c) of the New York Civil Practice Act, having been earned for personal services rendered by him for the period of sixty days *prior* to the commencement of supplementary proceedings against him, and were necessary for the reasonable requirements of his family. On the other hand, he claims that after leaving the employ of Tangel he continued to service certain of its customers to whom he had sold equipment the satisfactory performance of which he felt responsible for, and that the payments made to him by Tangel on the dates in question were for services rendered by him *after* the filing of the petition.

 It is my opinion that the record amply demonstrates that those payments were made to cover commissions earned by the bankrupt *before* he filed the petition in bankruptcy. The question then arises: are they exempt pursuant to § 792(c) of the New York Civil Practice

Act? That Section provides as follows: "792. This article does not authorize the seizure of, or other interference with * * * (c) the earnings of the judgment debtor for his personal services rendered within sixty days next before the institution of the special proceeding, or rendered thereafter, to the extent that such earnings shall appear to the court by oath or otherwise to be necessary for the reasonable requirements of the judgment debtor and his family, if dependent upon him; * * *."

There is nothing in the record, "by oath" of the bankrupt or otherwise, to show that the funds in question were necessary for the support of his family. On the contrary, the record reveals that he left his employment with Tangel, where he was earning at least $150 per week, to take a job with one of its competitors, White Machinery Co. Inc., where he was working when he received the checks from Tangel, dated March 24, April 2 and April 11, 1958. He testified, at page 116 of the record of the hearing before the Referee, that he was receiving a drawing account from his new employer of $175 per week, which was $25 a week *more* than he had earned at his prior employment, so that he had a substantial income when he received the checks.

The bankrupt, in his brief, cites the case of In Matter of Edelman, D.C., 172 F.Supp. 200, decided by my colleague Judge Bruchhausen, wherein he confirmed the finding by Referee Warner that certain funds in the bank account of said bankrupt's wife were not subject to an application by the trustee for turnover to him. That case is clearly distinguishable from the case at bar. As Judge Bruchhausen pointed out, all Referee Warner had before him was the Trustee's petition and the answering affidavit of the bankrupt's wife, in which she claimed that part of the money on deposit belonged to her mother, one Helen Simon, and that the balance came from the salary of her husband, which was exempt from attachment by reason of the fact that it was necessary for house-

hold expenses. Judge Bruchhausen's decision states at page 202, "It is not disputed that at the time of the trustee's application for turnover of the bank deposit, the balance amounted to $133.67. The evidence is in conflict as to whether all or part thereof belonged to Helen Simon (bankrupt's wife's mother). None of it was in the possession of the bankrupt. Under these circumstances, the Referee would not be warranted in summarily directing a turnover to the trustee of the balance on deposit." (Matter in parenthesis added.)

Judge Bruchhausen also sustained Referee Warner's refusal to find that the balance in the bank was the property of the bankrupt and an asset of the estate.

In the case at bar the bankrupt, *after* filing his petition in bankruptcy, received the checks in question for commissions earned by him *prior* to such filing. His original petition and schedules do not disclose any claim against his former employer. It was only after the trustee had interrogated the bankrupt concerning them that their receipt by him was revealed. Thereafter an application was made by him for permission to amend his schedules to include "an unliquidated claim for wages due petitioner from Tangel Material Handling Equipment Company, Inc. in the amount of $900.00 which is exempt having been earned within 60 days prior to the filing of the petition in bankruptcy." It should be noted that this application was *not made by the bankrupt until October 16, 1958, some seven months after the filing of the petition in bankruptcy.*

■ In my opinion there is ample support for the Referee's finding that specifications of objection numbered 5 and 6 were sustained.

■ I come now to specifications numbered 12 and 13. These specifications concern themselves with the repayment of a loan to the Queens National Bank. The record reveals that the bankrupt was given four checks by Tangel Material Handling Equipment Co. Inc. Three of them, dated respectively, September 25, 1957, October 22, 1957, and November 4, 1957, were drawn to the order of the bankrupt. Each of the first two was in the sum of $110.11, the third in the sum of $78.50. The fourth check, dated December 23, 1957, was in the sum of $110.11, and was payable to the Queens National Bank. The bankrupt endorsed the first three checks, which were deposited in his wife's bank account. She used the proceeds thereof to repay a loan which she and the bankrupt had obtained from the Queens National Bank, and which had been secured by either a conditional bill of sale or a chattel mortgage. In his statement of affairs the bankrupt denied under oath that he had repaid any loans during the year preceding the filing of the petition. He contends that the loan in question was paid *not by him,* but by his *wife,* since the payments came from *her* bank account. I reject that contention. The bankrupt used his wife and her bank account as the conduit through which he repaid the loan. Three of the checks to cover this loan were drawn to *his* order by his employer and the fourth check was drawn directly to the order of the bank. It also appears from the record that *both* the bankrupt and his wife were liable to the bank on the loan. Specification number 12 was, therefore, properly sustained by the Referee.

■ As to specification 13, the Referee's finding is reversed. The record reveals that the funds in question were advanced to the bankrupt by Tangel to repay the loan on the car owned by the bankrupt's wife, but used by him in his work. There was no evidence of fraudulent concealment, transfer or removal of these funds.

Accordingly, the petition for review is denied as to Specifications 5, 6 and 12, and granted as to 13.

Settle order on notice.