In re LUTFY.

(District Court, S. D. New York. November 12, 1907.)

No. 10,028.

1. BANKRUPTCY—INTERFERENCE WITH PROPERTY OF BANKRUPT—EFFECT OF PAYMENT OF PETITIONING CREDITOR.

The effect of the pendency of involuntary bankruptcy proceedings is not altered by the fact that the claim of the petitioning creditor was paid after the filing of the petition, since until it had been legally dismissed any other creditor may become a party thereto, and any person interfering with the property of the bankrupt after the filing of the petition does so at his peril.

2. SAME—CONTEMPT OF COURT.

While property of a debtor was in the hands of a sheriff under an attachment, a petition in involuntary bankruptcy was filed against him with an application for a receiver. Because of such fact the attorney for the attaching creditor refused to give a bond, and the sheriff, although advised of the bankruptcy proceedings, at the instance of the attorney for an adverse claimant and on being informed by him that the claim of the petitioning creditor had been paid, delivered the property to such adverse claimant, who disposed of the same. Held that, while the action of the sheriff was not legally justified, he would be exonerated from the charge of contempt of the bankruptcy court upon his claim that he supposed the bankruptcy proceedings had terminated, but that the adverse claimant and his attorney were clearly guilty of contempt, and would be subjected to a heavy fine unless a bond was given to respond for the value of the property should it be adjudged to belong to the bankrupt.

In Bankruptcy. On motion to punish for contempt.

Arthur L. Livermore, for the motion.
Maurice B. Blumenthal and Maurice M. Greenstein, opposed.

HOLT, District Judge. This is a motion to punish for contempt Alfred J. Johnson, undersheriff of the county of New York, Winfield Sullivan, assistant deputy sheriff of the county of New York, Joseph Macksoud and Maurice M. Greenstein. Deeb Lutfy, the bankrupt, was engaged in the business of manufacturing and selling oriental goods. On August 10, 1907, a warrant of attachment in an action against him was issued to the sheriff of New York county, who there-

upon levied upon and took possession of seven cases of oriental goods, and stored them in a warehouse. On August 14, 1907, a second writ of attachment was issued to the sheriff, with directions to also levy on said seven cases then in his possession. On August 12, 1907, a firm known as Lutfy & Macksoud filed a formal claim of ownership of the goods. The question of ownership was tried before a sheriff's jury, apparently on the same day, and a verdict found, in accordance with the usual practice, in favor of the claimants. The sheriff thereupon demanded that the attaching creditors give a bond. On the 13th a petition in bankruptcy was filed and an application for a receiver made. No judge of this court was at that time in New York City. The papers were sent to me in the country. A receiver was appointed. I notified the attorney for the petitioning creditor on the 14th, by telephone, that I had appointed a receiver. The order was returned by mail, and received by the clerk on the morning of August 15th. On or before that morning, the creditor in the first attachment, having apparently been paid or settled with, directed the sheriff to release the levy of the first attachment. The claim of the petitioning creditor in the bankruptcy proceeding had been paid or settled, and the attorney for the petitioning creditor notified the sheriff that he had no longer any interest in the matter. The sheriff notified the attorney for the creditor in the second attachment that, if a bond was not given, he would release the goods to the claimants. The attorney for the creditor in the second attachment informed the sheriff that a petition in bankruptcy had been filed; that he had been informed by the attorney for the petitioning creditor that a receiver had been appointed; that the order which had been prepared appointing a receiver contained an injunction which specifically enjoined the sheriff from delivering the seven cases of goods attached to any one except the receiver. The attorney for the creditor in the second attachment explicitly warned the sheriff against proceeding, and gave him full notice that the petition in bankruptcy was on file, that a receiver had been appointed, and an injunction issued. The sheriff, however, after such notice, on the morning of the 15th, delivered an order for the goods to the attorney for the claimants. The goods were removed. On the argument of this motion, the attorney for the claimants stated that they were still in the warehouse, and would be returned. He subsequently asserted that he was mistaken, and that the goods have been removed from the country.

The attorney for the undersheriff and the deputy sheriff asserts that they inferred, when the attorney for the petitioning creditor informed them that his claim was satisfied, that the bankruptcy proceedings were at an end; but they had no right to make any such assumption. A petition in bankruptcy is not disposed of by paying the petitioning creditor's claim. It may be availed of by any creditor, and sheriffs are bound to know the law in that respect. But, upon the whole, although the conduct of the undersheriffs in this case is subject to serious criticism, the proof of contempt in this case is not so clear that I should feel justified in finding them guilty of it. They had sufficient notice and reason to believe that the petition was filed, and that a receiver had been or would be immediately appointed. All that the sheriff had

to do was to wait a few hours until he could have official proof of the receiver's appointment. Indeed, the filing of the petition was enough. The fact that the petitioning creditor was settled with was legally immaterial. Until the petition was legally dismissed, any creditor could come in and take advantage of it. Its filing was an injunction and caveat to the world. Any person interfering thereafter with the bankrupt's property did so at his peril. It is true that the sheriffs in this city understood the law on this subject; and while, in this case, I have concluded to assume that they may not have understood the law, it should be understood that no such explanation will be accepted hereafter.

In my opinion Macksoud and his attorney, Greenstein, were clearly guilty of contempt in this case. It was a case of deliberate and intentional withdrawal of goods, claimed to be a bankrupt's goods, after knowledge of the filing of a petition and of the probable appointment of a receiver. If Macksoud owned the goods, that could be easily determined in this court. The object was to make it useless to have that question determined, and to remove the goods where they could not be recovered. Macksoud and Greenstein are each fined $100, to be paid within three days to the attorneys for the receiver, to compensate them for their labor in making this motion, and, if not so paid, each will stand committed until his fine is paid. If a satisfactory surety company bond for $10,000 is given, conditioned for the payment to the receiver of the value of the goods, if it is determined that they belong to the bankrupt, and a stipulation filed that the matter be referred to a referee to take testimony and report, as in a reclamation proceeding, whether Macksoud is the owner of the goods, and, if not, how much is their value, no further punishment will be imposed. If such a bond is not given within three days, Macksoud and Greenstein will be fined the sum of $5,000, to be paid to the receiver, and stand committed until the fine is paid. The order should be settled on notice.