CLAY v. WATERS (two cases).

(Circuit Court of Appeals, Eighth Circuit. April 18, 1910.)

Nos. 3,131, 3,132.

*(Syllabus by the Court.)*

**1.** CONTEMPT (§ 66*)—JUDGMENTS FOR HOW REVIEWABLE.

A judgment for a criminal contempt committed in the progress of a suit in equity is reviewable by writ of error only.

A judgment against a party to a suit in equity for a civil contempt committed therein before final decree is reviewable by appeal from the final decree only.

A judgment against a party for a civil contempt committed after the decree is reviewable by appeal.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 214, 223–228; Dec. Dig. § 66.*]

**2.** CONTEMPT (§§ 3, 4*)—BANKRUPTCY (§ 136*)—DEFINITION AND DISTINCTION —"CIVIL CONTEMPT"—"CRIMINAL CONTEMPT."

Contempts are of two classes: "Criminal contempts," which are prosecuted to preserve the power and vindicate the dignity of the courts and to punish the offender; and "civil contempts," which are prosecuted to preserve and enforce the rights of private parties and to compel obedience to orders and decrees to enforce the rights and administer the remedies to which the court has found them to be entitled.

At the time of his adjudication in bankruptcy, a bankrupt had $40,000. After the adjudication the defendant knowingly took a part of this money, loaned some of it on notes and mortgages in his name, and with some of it bought real estate in his name for the purpose of concealing it from the trustee in bankruptcy and appropriating it to himself. The trustee brought a suit for these notes and this real estate, and after the suit was commenced, and before the decree, the defendant disposed of the notes and the real estate to innocent parties for the purpose of withdrawing the property from the jurisdiction of the court and defeating its coming decree.

*Held,* these acts constituted a criminal contempt. The judgment on a petition which set forth these facts that the defendant be imprisoned for contempt of court for 10 months unless within that time he accounted for and paid over the proceeds of the property he had converted to his use in this way was a judgment for a criminal contempt with leave to purge the contempt and be released by payment of the proceeds.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. § 4; Dec. Dig §§ 3, 4;* Bankruptcy, Dec. Dig. § 136.*

For other definitions, see Words and Phrases, vol. 2, pp. 1747, 1748; vol. 2, p. 1194.]

**3.** BANKRUPTCY (§§ 288, 293*)—OF WHAT CONTROVERSIES DISTRICT COURT HAS JURISDICTION—PROCEEDINGS IN BANKRUPCY V. CONTROVERSIES AT LAW AND IN EQUITY.

The District Court sitting in bankruptcy has jurisdiction to draw to itself and to determine by summary proceedings after reasonable notice to the claimants all controversies between the trustee and adverse claimants over liens upon and the title and possession of (1) property in the possession of the bankrupt when the petition in bankruptcy is filed, (2) property held by third parties for him, (3) property lawfully seized by the marshal as the bankrupt's under clause 3 of section 2 of the bankruptcy law, and (4) property claimed by the trustee which has been lawfully reduced to actual possession by the officers of the court.

These controversies relative to the property of the bankrupt are within the jurisdiction of the District Court in proceedings in bankruptcy under

section 2 of the bankruptcy law (Act July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420]), and they are not controversies at law or in equity as distinguished from proceedings in bankruptcy within the meaning of section 23 of that act.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. §§ 288, 293.*]

4. BANKRUPTCY (§ 293*)—PLENARY SUIT TO DETERMINE SUCH CONTROVERSIES MAINTAINABLE IN DISTRICT COURT.

A plenary suit may be maintained in the District Court to determine the controversies above specified which it has jurisdiction to determine by summary proceedings in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 293.*]

5. BANKRUPTCY (§ 100*)—CONTEMPT UNDER SECTION 725, REV. ST.—INTENTIONAL SEIZURE AND DISPOSITION OF BANKRUPT'S PROPERTY BY STRANGER AFTER ADJUDICATION IS—"CONTEMPT OF COURT."

The subsequent intentional taking and concealment of property of a bankrupt in his possession at the time of his adjudication by one who then had no lien upon or title or debatable claim to it is a violation of the injunction against the interference with the bankrupt's property embodied by the settled law of the land in the adjudication and in the legal custody secured by the court and is punishable as a "contempt of court" under section 725, Rev. St. (U. S. Comp. St. 1901, p. 583).

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 100.*

For other definitions, see Words and Phrases, vol. 2, pp. 1489–1492; vol. 8, p. 7614.]

6. BANKRUPTCY (§ 100*)—FILING PETITION AND ADJUDICATION AN INJUNCTION AGAINST INTERFERENCE BY STRANGERS.

The filing of the petition in bankruptcy and the adjudication themselves constitute a caveat and an injunction by the court against any interference with the property of the bankrupt by all persons who have no liens upon, titles, or debatable claims to it at the time the petition is filed, and the taking and disposition of it by any of them violates that injunction.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 100.*]

7. CONTEMPT (§ 63*)—JUDGMENT FOR NEED NOT RECITE ACTS CONSTITUTING WHERE PETITION AND ANSWER SHOW THEM.

It is not indispensable to the validity of a judgment for contempt of court that it should recite the acts constituting the contempt, where they are alleged in the petition for the judgment and are admitted by the answer, and the judgment is that the defendant is "adjudged to stand in contempt of this court as alleged in the petition."

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 195, 197–201; Dec. Dig. § 63.*]

In Error to and Appeal from the District Court of the United States for the Southwestern Division of the Western District of Missouri.

Action by W. H. Waters, trustee in bankruptcy, against George R. Clay and others. From a judgment finding defendant George R. Clay guilty of contempt, he brings error and also appeals. Affirmed.

Shepard Barclay (Hugh Dabbs, R. H. Davis, P. H. Cullen, and Thomas T. Fauntleroy, on the brief), for plaintiff in error and appellant.

John W. Halliburton (Hiram W. Currey and Samuel McReynolds, on the brief), for defendant in error and appellee.

Before SANBORN, Circuit Judge, and RINER and WILLIAM H. MUNGER, District Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SANBORN, Circuit Judge. George R. Clay, who will be called the "defendant," assails by writ of error and by appeal the judgment of the District Court that he is guilty of contempt of that court and that he be imprisoned for a period of 10 months unless before the expiration of that time he accounts for and pays over to W. H. Waters, trustee of the estate of Robert Boatright, a bankrupt, the proceeds of certain property converted by the defendant to his use after the institution of a suit against him for that property in the court below. At the threshold of this case there is a motion by the trustee to dismiss both the writ and the appeal on the ground that the judgment was for a civil and not for a criminal contempt, and that this court has no jurisdiction to review it. The defendant, on the other hand, contends, among other things, that the judgment should be reversed because the court below never had any jurisdiction of the subject-matter of the suit out of which it arose. A brief review of the proceedings anterior to the judgment is, therefore, indispensable to a discussion or a determination of the questions here presented.

On December 22, 1902, Robert Boatright was adjudged a bankrupt by the court below. On April 15, 1905, the trustee in bankruptcy of his estate exhibited a bill in equity in that court against the defendant and others wherein he averred that Boatright had $40,000 at the time of the filing of the petition in bankruptcy which in August, 1903, he carried away and deposited in the Canadian Bank of Commerce at Windsor, Ontario, and concealed from the trustee, that the defendant and others in August 1904, took this money, and, with knowledge that it was the property of the estate of Boatright in bankruptcy, with intent to continue its concealment from the trustee, invested a part of it in the defendant's name in promissory notes and mortgages on specified real estate which secured them and in real estate which is described in the bill, and the trustee prayed that the court would adjudge that this real estate and these notes and mortgages were the property of the estate, and that the defendant should assign and convey them to the trustee. Clay denied the material averments of the bill; but after a final hearing the court below found them to be true and rendered a decree to the effect that certain real estate and certain notes and mortgages described in the bill, which the defendant held in his name and control when the suit was commenced, and when the subpœna was served upon him, were the property of the estate, and that he should convey them and their proceeds to the trustee. An appeal was taken from this decree, and the portion of it which has been recited was affirmed by this court. Clay v. Waters, 161 Fed. 815, 88 C. C. A. 633. Thereafter and on January 25, 1909, the trustee filed a petition in the District Court, in which he set forth the facts which have been stated in detail and alleged, among other things, that the defendant for the purpose of hindering and defrauding him and the creditors of the estate of Boatright and for the purpose of defeating the jurisdiction and the decree of the court below, during the pendency of the cause and after the subpœna was served upon him, conveyed to strangers to the proceedings all the real estate described in the bill and decree as held and controlled by him except one lot which he had conveyed before the suit was commenced, and that for

the same purpose and with like intent he had during the same time transferred or otherwise disposed of all the notes and mortgages described in the decree, and the trustee asked that a citation might be issued to the defendant which should require him to comply with the decree and to show cause why he should not be committed for contempt of the court. A citation was issued upon this petition on January 25, 1909, returnable on January 27, 1909, which the court held insufficient. Thereafter and on February 20, 1909, the court made an order which recited the substance of the petition and particularly the fact that it was made to appear to the court by the petition that the defendant had wholly failed to comply with the decree, that for the purpose and with the intent of defeating the jurisdiction and decree of the court he had conveyed to third persons during the pendency of the suit, and, after his answer was filed therein, all the real estate described in the bill and decree as held and controlled by him except the lot which he had conveyed before the commencement of the suit, and that for the same purpose and with like intent he had conveyed away or disposed of to third persons during the same time all the notes and mortgages described in the bill and decree. And in view of these premises the court ordered that he be required to appear before it and show cause, if any he had, why he should not be punished for contempt, and that he should make return to the order on or before March 15, 1909.

The defendant answered the order and the petition. In his answer he admitted that he had concealed and conveyed away for value between the time of the service of the subpœna upon him and the time of the entry of the decree in the suit all the real estate described as held and controlled by him except three tracts, one of which was conveyed by him before the suit was commenced and two of which were lost upon a foreclosure thereafter. He also admitted in his answer that he had either collected or sold and assigned during the same time all the notes and mortgages described in the bill and decree so that when the decree was rendered he could not comply with it. And he further alleged that he did not have in his possession or under his control at the time of the entry of the decree or at the time of the service of the order to show cause upon him any of this property or any of the proceeds thereof. The answer also contained averments that he made this disposition of the property described in the bill in good faith "without intent to commit any fraud upon this honorable court or its jurisdiction," that no notices of the pendency of the suit were filed in the offices of the recorders of deeds in the counties in which the property was situated, that he believed that the decree itself divested from him all his right to the real estate in question, that after the decree he made a quitclaim deed of it to the trustee, that the decree permitted the payment of the principal and interest of the notes and mortgages by him in lieu of the assignment thereof, that it adjudged a recovery from him of the aggregate amount of these notes and mortgages and an execution to collect this amount, and that an execution therefor had been issued and had been levied upon certain property as his property. The court below was of the opinion that this answer admitted the material facts upon which the charge of a contempt of the

court was founded, and it adjudged that the defendant "stand in contempt of this court as alleged in the petition, that he be imprisoned in the county jail of Henry county for the state of Missouri for the period of 10 months unless he shall before the expiration of said time account for and pay over to the said W. H. Waters, trustee in bankruptcy, the proceeds of the property in question converted by him to his use after the institution against him of the plenary suit mentioned in the petition herein."

The statement of the nature of and of the distinction between criminal contempts and civil contempts made by this court in the case In re Nevitt, 117 Fed. 448, 458, 54 C. C. A. 622, 632, which received the approval of the Supreme Court of the United States in Bessette v. W. B. Conkey Company, 194 U. S. 324, 328, 24 Sup. Ct. 665, 666 (48 L. Ed. 997), furnishes the standard by which the decision of the question whether this adjudication is for a criminal contempt or for a civil contempt must be determined, and it is here quoted:

"Proceedings for contempts are of two classes—those prosecuted to preserve the power and vindicate the dignity of the courts and to punish for disobedience, of their orders, and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts, and the people, are interested in their prosecution. The latter are civil, remedial, and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect or enforce. Thompson v. Railroad Co., 48 N. J. Eq. 105, 108, 21 Atl. 182; Hendryx v. Fitzpatrick (C. C.) 19 Fed. 810; Ex parte Culliford, 8 Barn. & C. 220; Rex v. Edwards, 9 Barn. & C. 652; People v. Court of Oyer & Terminer, 101 N. Y. 245, 247, 4 N. E. 259 [54 Am. Rep. 691]; Phillips v. Welch, 11 Nev. 187, 190; State v. Knight, 3 S. D. 509, 513, 54 N. W. 412 [44 Am. St. Rep. 809]; People v. McKane, 78 Hun, 154, 160, 28 N. Y. Supp. 981, 4 Bl. Comm. 285; 7 Am. & Eng. Enc. Law, 68. A criminal contempt involves no element of personal injury. It is directed against the power and dignity of the court, and private parties have little if any interest in the proceedings for its punishment. But if the contempt consists in the refusal of a party or a person to do an act which the court has ordered him to do for the benefit or the advantage of a party to a suit or action pending before it, and he is committed until he complies with the order, the commitment is in the nature of an execution to enforce the judgment of the court, and the party in whose favor that judgment was rendered is the real party in interest in the proceedings."

"It may not be always easy to classify a particular act," said Mr. Justice Brewer, in Bessette v. W. B. Conkey Company, 194 U. S. 329, 24 Sup. Ct. 667 (48 L. Ed. 997), "as belonging to either one of these classes. It may partake of the characteristics of both. A significant and generally determinative feature is that the act is by one party to a suit in disobedience of a special order made in behalf of the other. Yet sometimes the disobedience may be of such a character and in such a manner as to indicate a contempt of the court rather than a disregard of the rights of the adverse party."

If the court below had ordered the defendant to convey to the trustee or to account for and pay over to him within a certain time the proceeds of the property with which he was charged by the decree, or any specific part of it, if after proper notice he had refused so to do, and the court after a hearing had adjudged that he be committed to jail until he obeyed the order, there would have been no doubt that

the judgment was for a civil contempt. But in these proceedings for contempt the court made no order that the defendant should convey any of the property or account for and pay over any of the proceeds of the property described in the decree, although the trustee prayed for that relief. It may be that the reason why no such order was made was that the defendant answered that he had placed beyond his control before the decree was entered all of this property, and that at the time that he made his answer he had no control over any of its proceeds so that it was impossible for him to return to the court or its trustee either the property or its proceeds. The defendant's counsel insist that the judgment for contempt for the disobedience of such an order or for the defendant's disobedience of the decree could not stand because his answer shows that he could not comply with it. Conceding that this position is sound, it is not material to the case in hand. The judgment under consideration was not rendered on account of a failure to comply with any such order; it was not rendered for an act of the defendant "in disobedience of a special order made in behalf of" the trustee in the proceedings for contempt, and, if the impossibility of a compliance by the defendant with the decree would render a judgment for contempt for a failure to obey it erroneous, this judgment must nevertheless be sustained if there is any just cause for it, and the record discloses these causes: An adjudication in bankruptcy is a seizure by the court of bankruptcy and a transfer to that court of all property in the possession of the bankrupt at the time of the adjudication in which he has any interest.. Thenceforth such property is a part of the trust estate in the legal custody of the court for the benefit of the creditors of the bankrupt and adverse claimants. Mueller v. Nugent, 184 U. S. 1–14, 22 Sup. Ct. 269, 46 L. Ed. 405; White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183; Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157; In re Rochford, 124 Fed. 182, 184, 59 C. C. A. 388, 390; In re Granite City Bank, 137 Fed. 818, 821, 70 C. C. A. 316, 319; In re Rodgers, 125 Fed. 169, 60 C. C. A. 567; In re Reynolds (D. C.) 127 Fed. 760, 762; In re Schermerhorn, 145 Fed. 341, 342, 76 C. C. A. 215, 216.

Any willful interference with any of this trust estate, any willful attempt to injure it, to withdraw it from the custody of the court, or to conceal it from the court or any of its officers whose duty it is to administer it, is a defiance of the power and an affront to the dignity of the court which may be punished by a judgment for contempt. In re Walsh Bros. (D. C.) 159 Fed. 560, 562; In re Lutfy (D. C.) 156 Fed. 873, 875; Wartman v. Wartman, 29 Fed. Cas. No. 17,210, pages 303, 304, 305, 306. Indeed, it is an offense under the bankruptcy law punishable by imprisonment for a period not exceeding two years knowingly and fraudulently to receive any material amount of property from a bankrupt after the filing of a petition with intent to defeat the act. Act July 1, 1898, c. 541, 30 Stat. 554, § 29b, subd. 4 (U. S. Comp. St. 1901, p. 3433). The $40,000 out of which the defendant took the money with which he bought the property the title to which he placed in his name was in the possession of the bankrupt at the time of the adjudication against him. He concealed it from the trustee. The defendant with knowledge of this fact took a portion of it and continued the con-

cealment by putting the title to it in his name, and he thereby became clearly guilty of a contempt of the court below.

A party to a suit, who knowingly and intentionally disposes of its subject-matter with intent to withdraw it from the jurisdiction of the court and to render futile any future decree concerning it, unavoidably defies the power and affronts the dignity of the court and thereby renders himself liable to punishment for contempt. Wartman v. Wartman, 29 Fed. Cas. No. 17,210, pages 303, 304, 305, 306; Ex parte Kellogg, 64 Cal. 343, 344, 30 Pac. 1030; Greite v. Henricks, 71 Hun, 11, 24 N. Y. Supp. 516; In re Grant, 26 Wash. 412, 67 Pac. 73, 74; American Construction Co. v. Jacksonville, T. & K. W. Ry. Co. (C. C.) 52 Fed. 937, 941; Devlin v. Hinman, 161 N. Y. 115, 117, 55 N. E. 386; 9 Cyc. par. D, and note 22. After the trustee had commenced the suit to subject the property that stood in the name of the defendant to administration as a part of the bankrupt's estate, and after the subpœna therein had been served upon him, he disposed of a large part of that property for the purpose of taking it out of the jurisdiction of the court below and of defeating its coming decree. Here was a second act which constituted a contempt of that court. While these acts and the failure of the defendant to comply with the decree prevented the trustee from securing the property to which he was entitled, and for that reason they have some of the characteristics of civil contempts, the intentional continuance of the concealment from the trustee and the court of the part of the bankrupt's estate which the defendant invested in his name and the willful withdrawal of the property in his name which was the subject of the suit against him from the jurisdiction of that court after the suit was commenced for the purpose of defeating its decree were such bold and defiant affronts to its dignity that the civil aspect of the acts of the defendant sinks into insignificance. That this was the view of the court below is evidenced by the fact that the judgment is clearly punitive. It is imprisonment for 10 months unless the defendant purges himself of the contempt of the court by accounting for and paying back to it the proceeds of the property he withdrew from its jurisdiction before that time expires. The conclusion is that the foundation of the judgment was the intentional taking and concealment of the bankrupt's estate by the defendant and his willful withdrawal from the jurisdiction of the court of the subject-matter of the suit against him after that suit had been commenced for the purpose of defeating its coming decree, and that this judgment was rendered for a criminal contempt in order to punish the defendant and to vindicate the authority of the court.

A judgment for a criminal contempt in a suit in equity is reviewable by writ of error. Act March 3, 1891, 26 Stat. 828, c. 517, § 6 (U. S. Comp. St. 1901, pp. 549, 550); Bessette v. W. B. Conkey Company, 194 U. S. 324, 338, 24 Sup. Ct. 665, 48 L. Ed. 997; Matter of Christensen Engineering Co., 194 U. S. 458, 461, 24 Sup. Ct. 729, 48 L. Ed. 1072.

A judgment against a party to a suit in equity for a civil contempt committed therein before final decree is reviewable by appeal from the decree only. Doyle v. London Guarantee Company, 204 U. S. 599, 605, 607, 27 Sup. Ct. 313, 51 L. Ed. 641.

A judgment against a party in a suit in equity for a civil contempt committed after the decree is reviewable by appeal. Wilson v. Calculagraph Co., 153 Fed. 961, 963, 83 C. C. A. 77.

The motion to dismiss the writ of error is, accordingly, denied, and the motion to dismiss the appeal is granted.

Counsel for the defendant argue that the judgment must be reversed because the District Court had no jurisdiction of the plenary suit between the trustee and the defendant upon which it is founded. They invoke the provisions of sections 23a and 23b of the bankruptcy law to the effect that the Circuit Courts shall have jurisdiction of all controversies at law and in equity as distinguished from proceedings in bankruptcy between trustees and adverse claimants to the same extent only as though bankruptcy proceedings had not been instituted, and such controversies had been between the bankrupts and such adverse claimants, and that such suits shall only be brought where the bankrupt whose estate is being administered by the trustee might have brought them if bankruptcy proceedings had not been instituted, unless by consent of the proposed defendant, and they insist that the District Court was without jurisdiction of this plenary suit because no authority to entertain such suits was specifically conferred upon it by the bankruptcy act, because the record fails to show that the court below would have had jurisdiction of the controversy in suit between the bankrupt and the defendant if there had been no bankruptcy proceedings and because the consent of the defendant could not confer jurisdiction over that suit and its subject-matter. If the property in controversy had been conveyed and delivered to the defendant before the petition in bankruptcy was filed, and the defendant had had a claim to it that was not merely colorable or evasive, and the objections here presented had been made in due time, they might have prevailed. Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175; First National Bank v. Title & Trust Co., 198 U. S. 280, 291, 25 Sup. Ct. 693, 49 L. Ed. 1051.

But the property here in controversy was in the possession of the bankrupt when the petition was filed and when the adjudication was made, and it then passed within the jurisdiction of the District Court below. The second section of the bankruptcy law invests the District Court sitting in bankruptcy with power to (7) "cause the estates of bankrupts to be collected, reduced to money and distributed and determine controversies in relation thereto except as otherwise provided," and the exception is of cases involving those controversies between trustees in bankruptcy and adverse claimants specified in section 23, which relate to property which was not in the possession of the bankrupt when the petition for adjudication was filed and in which the defendants do not consent to suits in the District Courts. The District Court sitting in bankruptcy has jurisdiction to determine by summary proceedings, after a reasonable notice to claimants to present their claims to it, controversies between the trustee and adverse claimants over liens upon and the title and possession of (1) property in the possession of the bankrupt when the petition in bankruptcy is filed, (2) property held by third parties for him, (3) property lawfully seized by the marshal as the bankrupt's under clause 3 of section 2 of the

bankruptcy law, and (4) property claimed by the trustee which has been lawfully reduced to actual possession by the officers of the court. Such controversies are controversies in proceedings in bankruptcy under section 2, and they are not controversies at law or in equity as distinguished from proceedings in bankruptcy within the meaning of section 23. Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; Whitney v. Wenman, 198 U. S. 539, 553, 25 Sup. Ct. 778, 49 L. Ed. 1157; In re Wood & Henderson, 210 U. S. 246, 255, 28 Sup. Ct. 621, 52 L. Ed. 1046; Babbitt, Trustee, v. Dutcher et al., 216 U. S. 102, 30 Sup. Ct. 372, 54 L. Ed. —— (Feb. 21, 1910); In re Rochford, 124 Fed. 182, 186, 59 C. C. A. 388, 392; In re Schermerhorn, 145 Fed. 341, 343, 76 C. C. A. 215, 217; Thomas v. Woods, 173 Fed. 585, 590, 97 C. C. A. 535.

As the District Court had jurisdiction of the $40,000 which was in the possession of the bankrupt at the time of the adjudication with a part of which the defendant purchased the real estate and obtained the promissory notes and mortgages which were the subject-matter of the plenary suit against him, and as that court had ample power to determine the controversies between the trustee and the defendant concerning all this property by summary proceedings upon reasonable notice to him, it also had jurisdiction of a plenary suit to determine them. The defendant may not successfully object that the District Court was powerless in such a suit because it thereby gave to him a longer notice and a better opportunity to prepare and present his claim to the property than the common practice in bankruptcy approved. Whitney v. Wenman, 198 U. S. 539, 553, 25 Sup. Ct. 778, 49 L. Ed. 1157.

In their reply brief counsel for the defendant urge in opposition to this conclusion that there is no averment or finding that the bankrupt ever had possession of the $40,000 within the United States, and that, while there is an allegation in the bill that he carried it away and deposited it in the Canadian Bank, there is no specific finding of that fact in the decree. But the adjudication in bankruptcy was made in 1902, and the decree in the plenary suit in 1908, after and pursuant to a decision of this court. The decree which is founded upon the averments of the bill finds and adjudges that the real property and the personal property which are the subject-matter of that suit were secured by the defendant with a part of the $40,000 which belonged to the trustee, that the defendant held this property for, and that he should transfer it to, the trustee. Since the attack upon the adjudication and upon the decree now is collateral and not direct, every fact requisite to sustain the jurisdiction of the court over the subject-matter and the parties thereto which the record does not affirmatively prove did not exist must be conclusively presumed to have been, and the mere absence of the findings or averments mentioned become, immaterial. Foltz v. St. Louis & S. F. Ry. Co., 60 Fed. 316, 318, 8 C. C. A. 635, 637; Board of Commissioners v. Platt, 79 Fed. 567, 570, 25 C. C. A. 87, 90; In re First National Bank, 152 Fed. 64, 69, 70, 81 C. C. A. 260, 265, 266.

It is said that the trustee by means of this suit sought to charge the property held by the defendant in equity with a trust in his favor, and, therefore, the suit was not a possessory but a plenary suit in equity. But a court of bankruptcy is a court of equity, all the property of a bankrupt is trust property, and every proceeding in the District Court in the administration of it is a proceeding in the execution of a trust in equity. The plenary suit was a proceeding to enforce this trust by taking the title and the possession of the property which was the subject-matter of that suit from the defendant who had wrongfully seized and concealed it and vesting them in the trustee to whom it belonged in trust, and that suit was both a possessory and an equity proceeding. There was no lack of jurisdiction in the District Court either of the suit or of its subject-matter.

Complaint is made of the judgment that it is in violation of section 725 of the Revised Statutes (U. S. Comp. St. 1901, p. 583), to the effect that the power to punish for contempt shall not be construed to extend to any cases except, "and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of the said courts," because the taking of the bankrupt's property and its concealment in the defendant's name before the suit was commenced and its subsequent transfer by the defendant to innocent third parties before the decree was not a disobedience or resistance by the defendant to any lawful order or command of the court. Attention is sharply challenged to the fact that there was no restraining order or specific injunction against the taking and conversion of the property of the bankrupt by this defendant. But the filing of the petition in bankruptcy and the adjudication which followed it embodied in themselves a commanding injunction of the court against the interference of the defendant with and his concealment and removal from the trustee and the court of any of the property of the bankrupt. Against the defendant and against all others who had no valid lien upon or interest in that property at the time of the adjudication, the injunction and command of the court against such interference and removal and notice thereof to all the world were embodied in the injunction and issued therewith by the settled law of the land. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; In re Rodgers, 60 C. C. A. 567, 578, 125 Fed. 169, 180; In re Kolin, 134 Fed. 557, 560, 67 C. C. A. 481; In re Granite City Bank, 137 Fed. 818, 821, 70 C. C. A. 316, 319; Wilkinson v. Goodfellow-Brooks Shoe Co. (C. C.) 141 Fed. 218, 220; State Bank of Chicago v. Cox, 74 C. C. A. 285, 287, 143 Fed. 91, 93; In re Erie Lumber Company (D. C.) 150 Fed. 817, 829; In re Fleischer (D. C.) 151 Fed. 81, 82. The decisions of the Supreme Court in York Manufacturing Co. v. Cassell, 201 U. S. 344, 353, 26 Sup. Ct. 481, 50 L. Ed. 782, and Hiscock v. Varick Bank of New York, 206 U. S. 28, 41, 27 Sup. Ct. 681, 51 L. Ed. 945, cited for the defendant, merely hold that this caveat and injunction do not deprive those who have valid titles to or liens upon the property claimed by the bankrupt at the time the petition is filed of those liens or titles. They do not in any way modify this general rule or diminish its controlling force in all cases like that in hand, wherein the intermeddler

had no claim upon or interest in the bankrupt's property at the time of the adjudication. The seizure of the money of the bankrupt after the adjudication and its concealment by the defendant in his name in real estate and promissory notes and his transfer of this real and personal property to innocent third parties to withdraw it from the jurisdiction of the court below and to defeat its coming decree after he was notified by the commencement of the suit to turn it over to the trustee were repeated disobediences and resistances of the injunction and command of the court, and constituted contempts of that court well within the terms of section 725, Rev. St.

Counsel argue that the judgment is erroneous: (1) Because the decree was ineffectual to pass the title to the real estate to the trustee under section 967 of the Revised Statutes, section 1 of the act of August 1, 1888, 25 Stat. 357, c. 729 (U. S. Comp. St. 1901, pp. 700, 701), and section 743 of the Revised Statutes of Missouri (Ann. St. 1906, p. 730). But the defendant had conveyed the title to the real estate to innocent third parties for value and had disposed of the notes and mortgages to like innocent parties before the decree was rendered. (2) Because the decree gave the trustee the alternative to have the notes indorsed and delivered to him or to recover of the defendant a judgment for their amount and execution therefor, and the trustee has elected the latter alternative, issued an execution for the amount, and levied upon some property as that of the defendant; but the decree gave the choice, not to the trustee, but to the defendant. It was that the defendant should either indorse and deliver the notes within 10 days after its filing, or pay the amount thereof to the trustee, and that in case he did neither the trustee might recover that amount and have execution therefor, and the defendant failed to deliver the notes or to pay their amount, and there is no evidence that the trustee has ever realized anything upon the execution he levied. (3) Because it is impossible for the defendant to pay over the proceeds of the property which he was required to transfer by the decree. (4) Because imprisonment for debt is forbidden in Missouri by section 990, Rev. St. U. S. (U. S. Comp. St. 1901, p. 709). And (5) because the amount which the defendant must pay over is not definitely fixed by the judgment.

These contentions might deserve serious consideration if this were a judgment for a civil contempt for the failure of the defendant to comply with the decree of the court or with some order of the court to convey the property specified in the decree, or to pay over its proceeds. But counsel for the defendant has so persuasively argued in opposition to the motion to dismiss the writ of error that this was a judgment for a criminal contempt that the court is completely convinced that he was right. This is a judgment rendered to vindicate the authority of the court and to punish the defendant for intentionally taking and concealing in his name the property of the bankrupt after the adjudication and before the commencement of the plenary suit and for intentionally transferring that property to innocent third parties for value for the purpose of withdrawing it from the jurisdiction of that court and of defeating its decree after the suit against him was brought and before the decree was rendered, and neither of the five objections

just recited, conceding the existence of the facts there stated, discloses any error in the action of the court below or any valid reason for a reversal of this judgment. Neither this judgment nor any other order in the contempt proceedings requires the defendant to account for or to pay over anything. It is not a judgment that he account for and pay over the proceeds of the property converted by him to his use and in default of such payment be imprisoned. Hence it is not material that he has no control of those proceeds and cannot pay them over and the judgment does not effect imprisonment for debt. The judgment is that the defendant be imprisoned for 10 months for his criminal contempt of the court unless within that time he pays over those proceeds. It is that he be punished by imprisonment for 10 months for his criminal contempt with leave to purge himself of that contempt and to be released by paying back to the court the proceeds of the property he took from it in defiance of its order and command embodied by the law in the adjudication in bankruptcy and in the legal custody of the property vested in the District Court by that adjudication and by the commencement of the plenary suit to recover it.

Finally, the property of the estate of the bankrupt which the defendant converted to his use was described in the petition and answer in the contempt proceedings. The amount of the proceeds which he derived from that property is the amount which he is permitted to pay under the judgment to purge himself of his contempt. He knew and still knows better than any one else what the amount of these proceeds is. He did not disclose it in his answer to the petition for his punishment for contempt, and it does not lie in his mouth now to defeat this judgment because that amount is not more definitely specified therein. Nor is it a fatal objection to the judgment that it does not recite the facts which constituted the contempt because the petition alleges and the answer admits them and the judgment recites that the defendant is "adjudged to stand in contempt of this court as alleged in the petition."

The court below had jurisdiction of the subject-matter and of the parties to the adjudication in bankruptcy, of the suit against the defendant to recover the property of the estate which he had taken and concealed, and of the proceeding to punish him for his contempt of the power and the dignity of that court, and there was no error of law in that proceeding.

The judgment below must, therefore, be affirmed, and it is so ordered.

NOTE.—The following is the opinion of Philips, District Judge, in the court below, after final hearing and argument before Philips and Pollock, District Judges:

PHILIPS, District Judge. This cause originated before Pollock, District Judge, sitting at Joplin. As the questions of law involved are important, it was deemed advisable that we sit in the final hearing and decision of the case.

It is a contempt proceeding, growing out of the following facts, substantially: Robert Boatright, several years ago, organized and conducted what is popularly known as the "buck-foot gang" at Webb City, in this district, the purpose and work of which were to fraudulently obtain from whom they might money by wagers on fake foot races, whereby Boatright greatly enriched himself. Judgments in large amounts were obtained against him by

his victims, and on petition of some of his creditors he was adjudged a bankrupt by this court. and W. H. Waters was elected and qualified as trustee of the estate. In various ways Boatright undertook to dispose of his moneys and property so as to conceal them from his creditors. After the adjudication in bankruptcy a large amount of said money came into the hands of the defendant, George R. Clay, an attorney at law, acting for Boatright. Clay undertook to cover up and conceal this property from the trustee in bankruptcy. To this end he acquired the title to a large quantity of real estate, and also promissory notes, which of right belonged to the trustee in bankruptcy. To compel the transfer and delivery of this property so held by him to the trustee in bankruptcy, the latter instituted in this court a plenary suit against George R. Clay and wife, and also Mrs. Boatright, the mother of said bankrupt. After full hearing the court found the issues for the trustee, and entered order and decree requiring the defendants by a given time to convey and transfer the real estate so held by each of them to said trustee, and also by proper indorsement to transfer and deliver up the notes so held. Still resisting the suit on its merits, the defendants therein appealed from said decree and order to the Court of Appeals, where the decree against him was affirmed. See 161 Fed. 815, 88 C. C. A. 633, at December term, 1907.

After the mandate therein was filed, the defendants failing and refusing to comply therewith and the decree of court, the trustee presented to this court his petition in due form, setting out the facts aforesaid, and alleging that during the pendency of said plenary suit the defendant, George R. Clay, and wife, for the purpose of defrauding the jurisdiction of the court and preventing the enforcement of any decree which might be rendered therein, clandestinely conveyed, transferred, and disposed of for their own use the said property, that they had failed and refused to comply with the order of the court, and asking that the defendants be cited to appear and show cause, if any, why they should not be adjudged in contempt. The defendant, George R. Clay, has made return to the writ, and the petitioner has moved the court for judgment of contempt notwithstanding the facts stated in the return.

Some of the matters stated in the return in avoidance are so trifling that they were not even urged by his counsel at the hearing, and others insisted upon are scarcely deserving of consideration. One insistence, for instance, is that the complainant lost the protection of any lis pendens by the suit instituted, for the reason that he failed to comply with the state statutes by filing notice in the local recorder's office of the county in which the land is situate of the pendency of the suit, and, therefore, the defendant was left free to transfer the property to any third party. It is sufficient to say of this:

(1) That such local statutes have no application to suits in equity in the federal courts to impress real property with a trust. It is not competent for state Legislatures by enactment to destroy the incidents and rights inhering in courts in chancery of the United States. 21 Am. Enc. L. p. 655, note 4. Mr. Pomeroy, in his work on Equity (3d Ed., vol. 4, § 317), speaking of such statutes says: "These statutes do not generally interfere with the original power of courts of equity to enforce obedience to their decrees by the parties themselves and to punish such parties for their disobedience by attachment, fine, imprisonment, or sequestration. The operation of these statutes is confined to the territorial limits and jurisdiction of the state in which they are respectively enacted. It does not extend to decrees of the United States courts. The effect of equitable remedies granted and decrees rendered by the United States courts, in the absence of legislation by Congress, is governed by the original doctrine of equity. Their decrees do not confer title. They must be executed by the parties, and obedience is compelled by proceedings in the nature of punishment for a contempt, attachment, or sequestration."

(2) Whether the purchaser or transferee under the defendant pendente lite took cum onere, or not, is entirely aside from the question of contempt here involved. The return alleges that the defendant for value transferred to innocent purchasers, thereby accentuating the fact that he thus sought the more effectually to thwart and circumvent by fraud the relief sought by the suitor. It is of no consequence that some of the land mentioned in the petition had been conveyed away by the defendant, George R. Clay, prior to the filing of the plenary suit against him. He obtained the money from Boat-

right after the adjudication in bankruptcy, and he held the legal title to most of it when the suit was instituted, and he appropriated to his own use the proceeds of whatever sales he made.

The defendant, George R. Clay, attempts to extenuate his conduct in this matter by returning that he took and acted upon the advice of reputable counsel. As said by Chief Justice Taney on the circuit in Wartman v. Wartman, Taney, 362, Fed. Cas. No. 17,210: "As regards the question whether a contempt has or has not been committed does not depend on the intent of the party but upon the act he has done. It is a conclusion of law from the act. Disobedience to legitimate authority of the court is by law a contempt, unless the party can show sufficient cause to excuse it." It certainly can be no excuse for one lawyer, committing a fraud and a contempt, that he was advised thereto by another lawyer. Why did the defendant seek advice about making such disposition of the property pending the suit, unless he was conscious of a meditated, fraudulent act and its possible effect upon his personal safety? The bald statement that he did not intend to defeat the jurisdiction or circumvent the decree of the court, if adverse to him, is as ineffectual as it is deceitful. A man like this defendant, under such circumstances, is conclusively presumed to have intended the natural and necessary consequences of such a willful act.

Reduced to concrete form, the situation is as follows: When Boatright was adjudged a bankrupt, the proceeding was a proclamation to all the world that the property of the bankrupt then in his possession, unimpressed with any pre-existing title or claim in favor of third persons, passed into the custody of the bankrupt court, to be by it marshaled and distributed among all the recognized creditors of the bankrupt. The assertion of the Supreme Court in International Bank v. Sherman, 101 U. S. 407, 25 L. Ed. 866, and Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, that the filing of a petition in bankruptcy is a caveat to all the world, and that the adjudication in legal effect is an attachment of the property of the bankrupt, and operates as an injunction against all persons who have not acquired tangible interest or right thereto, "to hands off," has never been challenged or modified. Upon the adjudication and qualification of the trustee all the right, title, interest and estate which the bankrupt had to the property at the institution of the proceedings, by operation of the statute, passed to and vested in the trustee. Bankr. Act July 1, 1898, c. 541, § 70, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451); White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183; In re Granite City Bank, 137 Fed. 818–821, 70 C. C. A. 316; In re Walsh Bros. (D. C.) 159 Fed. 560.

The courts speak but one language touching the effect and operation of the bankruptcy act upon the property owned and held by the bankrupt at the time of the adjudication. It places all the property of the bankrupt not exempt by law in the custody of the District Court. It is placed in custodia legis by the adjudication in bankruptcy. Every part of the estate belongs to the court and vests in the trustee when appointed. The adjudication operates as a constructive seizure of the property, and from that time forth it is in gremio legis. In re Rosser, 101 Fed. 565–566, 41 C. C. A. 497; In re Walsh Bros., supra; In re Jersey Island Packing Co., 138 Fed. 625, 71 C. C. A. 75, 2 L. R. A. (N. S.) 560; In re Briskman (D. C.) 132 Fed. 201; In re Schermerhorn, 145 Fed. 341, 76 C. C. A. 215; Odell v. Boyden, 150 Fed. 731, 80 C. C. A. 397; Remington on Bankruptcy, vol. 1, p. 1105.

Giving full force and effect to section 725, Rev. St. U. S. (U. S. Comp. St. 1901, p. 583), which limits the jurisdiction of the court, in case of civil contempt like this, to "the disobedience or resistance by * * * any party * * * or other person to any lawful right, process, order, rule, decree or command of the court," it must be conceded that it is difficult to escape the logic that this defendant, George R. Clay, with the intent to aid the bankrupt in concealing and appropriating his property, seized upon it, the legal effect of which wanton act was a defiance of the adjudication of the bankrupt court, by which the property in question was taken in custodia legis, and by its very terms operated as a caveat to him not to interfere with the property.

Concede that the defendant was entitled to his locus pœnitentiæ, when he was called upon by plenary suit to bring the property wrongfully withheld by him into court and surrender its physical possession to the trustee, it was a notification to him that he had contemned the order of adjudication. Instead of making immediate restitution, he resisted until another mandate was made upon him by order and decree of court. Failing to obey that, when cited for contempt, he comes, and by his return in effect says that, in order to carry out the purpose to disregard the adjudication in bankruptcy and to circumvent the final decree of the court, "I transferred the property to third parties, and, as I cannot literally comply by restoring the property in kind, I should stand acquitted of any intentional contempt." The impudence of such a defense is equaled only by its impotence.

In White v. Schloerb, 178 U. S. 542–548, 20 Sup. Ct. 1007, 1009, 44 L. Ed. 1183, the court laid down the rule "that the judge of the court of bankruptcy was authorized to compel persons who had forcibly and unlawfully seized and taken out of the judicial custody of that court property which had lawfully come into its possession as part of the bankrupt's property to restore that property to its custody," and therefore the District Court sitting in bankruptcy has jurisdiction by summary proceedings to compel the return of the property. It can make no difference that, instead of resorting to the more summary method of asking the referee of the court for an order on the trespasser to turn over the property to the trustee, recourse was had to a plenary suit to compel the surrender to the jurisdiction of the District Court. In either procedure there is found ample and essential power for the conservation and protection of estates in bankruptcy. Whitney v. Wenman, 198 U. S. 552–553, 25 Sup. Ct. 778, 49 L. Ed. 1157; Loveland on Bankruptcy (3d Ed.) p. 89.

The defendant has failed to comply with the order of the court to surrender this property. As a reason why he should not be dealt with as for contempt, he says, as already stated, that he had put it out of his power to surrender the property in kind, by its fraudulent transfer to third parties. Of this we observe: (1) He did not disclose during the pendency of the suit that he had thus disposed of the property. Under the issues as made by the bill and answer, the complainant and this court assumed up to the date of the final decree that the property in suit was in statu quo, in the possession of the defendant. His silence established that status. Why should not the rule be applied to him that commands that he who stands silent when he should speak shall not be heard thereafter when he does speak? The inability of a party to specifically perform may under certain circumstances avail as a defense to such command; but it stands as an inflexible rule of common sense and common justice that, where the contemnor creates the inability to perform in anticipation of an order of court commanding him to transfer and deliver, he rather aggravates than extenuates his offense. McCartan v. Van Syckel, 10 Bosw. (N. Y.) 694; Myers v. Trimble, 3 E. D. Smith (N. Y.) 607.

Ex parte Kellogg, 64 Cal. 343, 30 Pac. 1030, presents the case of where a party undertook to avoid the contempt writ by not accounting for property on the ground that he delivered it over to certain parties. The court said: "At the time and place stated in the order to show cause, petitioner duly appeared with his counsel and answered the allegations against him, whereupon the court took proof and from the evidence and papers in the case found the facts detailed, and that the delivery of the property by petitioner to Cassin was at his (petitioner's) own suggestion, and was made in anticipation of and for the purpose of defeating the order Rankin had asked for, and that, to accomplish his purpose to defeat the process of the court, petitioner had procured upon his own motion a delay in the proceedings, pending which he voluntarily and contumaciously disabled himself from complying with the order he anticipated being made, and, finally, that his action was but a bold attempt to defeat the order of the referee, duly and properly made, and cause the plaintiff's proceedings to be barren of any result. Finding such facts, the superior court rightly adjudged petitioner guilty of contempt and imposed upon him appropriate punishment." See, also, In re Grant, 26 Wash. 412, 67 Pac. 73; Devlin v. Hinman, 161 N. Y. 115, 55 N. E. 386.

The discussion by Chief Justice Taney, on the circuit, in Wartman v. Wartman, supra, is quite pertinent and authoritative. The bill there presented

was to reach certain money in the hands of the defendant as a trust fund, asking that it be turned over to the claimant. The answer of the defendant admitted that he had the money; but he resisted the claim. Thereafter the complainant asked that the money be brought into court. No order was made at the time, and the case was continued. At a subsequent term the complainant again presented petition, averring that the trust fund was insecure, and praying that the defendant be ordered to bring it into court, which order was made; but the defendant did not bring the money into court, and the fact appeared that after suit was brought, and before the order to either bring the money into court or to give security for its forthcoming, the defendant had disposed of two-thirds of it to persons who he deemed entitled thereto, and appropriated the remaining one-third to himself. The Chief Justice said that the defendant admitted it was in his hands when he filed his answer, and he knew the application made in the bill for an order upon him to bring the money into court was pending, and awaiting decision; and he now offers as a justification for his refusal to pay into court that in his judgment the complainant was not entitled to it, and that he had paid it over to those whom he considered were entitled to it, regardless of any order the court might place in the premises. The court said: "The answer has at least the merit of frankness; but the avowal of the contempt he had committed in parting with this trust fund while the question as to its disposition was pending before the court can hardly be received as a justification for a refusal to replace the money." He was adjudged in contempt. Counsel for the defendant here are in error in suggesting that this ruling of the Chief Justice was anterior to the amended section 725 as it now stands in the statute. That amendment was adopted March 2, 1831, while the judgment of the court was rendered in 1853.

That decision of Chief Justice Taney is pertinent to another aspect of the defendant's answer. His return shows that he sold and conveyed part of the real estate, pending the suit, to third parties for value, and that he collected or transferred the notes to third parties for value. If so, the presumption is that he received that value and still retains it. Seigel v. Cartel, 164 Fed. 691, 90 C. C. A. 512, and citations. He merely returns "that he has not in his possession or under his control any of said property, or the proceeds thereof." Speaking of a not dissimilar return, Chief Justice Taney said: "He [the defendant] states no loss of the property or money since that time. . He does not say that the portion of the funds which he retained for himself has been lost, but merely that he appropriated it for his own use. If he purchased property with it; what has become of that property? Such an excuse comes at this late hour from the very suspicious circumstances that he presents with it no schedule of his property, shows no losses since he paid away two-thirds of the trust fund, and does not even [not] offer to account for the one-third which he retained in his own hands and appropriated to his own use." So here, what has the defendant done with the proceeds of all the valuable property he transferred? How did the proceeds get out of his control? To whom did he give or pay them out? He states a mere conclusion, deemed to be satisfactory to his own mind; but he gives no facts, purging the accused conscience, to be met by countervailing proof. Such a bald statement is not acceptable in the forum of conscience. It but evinces the lack candor and shuffling evasion of a cunning mind. Courts might as well break and cast away the scepter of Justice, if derelicts may thus trifle with their authority.

Since this proceeding was instituted the defendant, George R. Clay, has made out in form quitclaim deeds to the real estate to the trustee, but without having reacquired the title conveyed by him to third parties, and now suggests that, if the doctrine of lis pendens does apply as to the real estate, the petitioner can pursue his remedy in the appropriate jurisdiction against the grantees under him. Such trifling with the court is offensive to intelligence. It but adds proof of the defendant's utter lack of sense of legal propriety and discrimination. A due administration of justice and respect for the court demand the punishment of the defendant, George R. Clay. Judgment in contempt ordered, to be executed by imprisonment in jail for a period of 10 months, unless the defendant shall sooner account for and turn over to the trustee the proceeds of the property in question converted by him after the institution against him of the said plenary suit.

In respect to the proceeding against Cora M. Clay, wife of said George R. Clay, the court regrets to have to say that it is unsatisfactory. Among other things, she states that the original petition on the merits was never served upon her, and she had no knowledge or information of its contents, or the object of the suit, until long after decree therein, other than that it was a suit against her husband, George R. Clay, and Mrs. Boatright. All this is directly contradicted by the record. The return of the marshal on the subpœna issued in the original suit shows personal service thereof on her April 2, 1905. That return is conclusive upon her. It is not subject to dispute in .this collateral proceeding. More than that, she appeared in that suit and filed answer under oath, on the 3d day of June, 1905. She took issue on the merits, and the cause went to final decree on the status thus established by the pleadings, which in effect conceded that she retained the title and possession of the property alleged in the bill to be in her name. By that decree it was judicially determined that the property in question was obtained with money taken and received from Boatright after his adjudication in bankruptcy and that it was fraudulently concealed and withdrawn from the trustee in bankruptcy. She admits in her return that, pending the plenary suit to compel the restitution of the property so wrongfully withheld from the trustee, she conveyed the same to a third party. She pleads her reliance on the direction in this matter of her husband; but this does not discharge her from her obligation to the law.

The petitioner, replying to her return, alleged that she conveyed the parcel situate in Newton county, Mo., pending this suit, and received in exchange therefor a given house and lot, situate in the city of Joplin, Jasper county, .Mo., on which she and her husband are now living; the petitioner offering to dismiss the contempt proceeding against her on condition that she now quitclaim said lot to the trustee herein. By stipulation of parties herein, it is conceded that the alleged title to said property in Newton county was placed in the name of the defendant Cora M. Clay July 20, 1905 (which was after the adjudication in bankruptcy against Robert Boatright), and that pending the plenary suit, on April 23, 1906, prior to the entering of decree therein, she and her husband conveyed the said land to one Finis L. Anderson for the expressed consideration of $2,000, and this consideration was paid by receiving back from said Anderson and wife a deed to the defendant Cora M. Clay for the said lot in the city of Joplin, subject to a deed of trust to secure a note of $2,000, and that George R. Clay, in addition to the land conveyed to Anderson, paid the sum of $300, difference between the values of the property. The consideration paid for the land obtained by Mrs. Clay, which she conveyed to Anderson, was $1,100.

The court may here pause to observe that the insufficiency and untruthfulness of the bald statement in the return of George R. Clay that he has not the property in question in his possession or under his control is made manifest by said stipulation. It shows that $1,100 was invested in the Newton county land. By the decree of court, which is conclusive on the defendants in this proceeding, that money was of the funds of the bankrupt, taken and misappropriated by the defendants. In exchange for that land they had the title to the Joplin property placed in Mrs. Clay; George R. Clay paying thereon also $300 in money. He and his wife are now occupying that property as a home. Yet they concealed this fact in their return herein, notwithstanding it now devolves that that property was and is under their control, without their offering to surrender it to the court or trustee. And they now ask to be discharged herefrom simply because they voluntarily, in anticipation of an adverse decree by the court, put it out of their power to restore to the trustee the real estate described in the bill and the decree.

Since the announcement of the foregoing opinion, the defendant Cora M. Clay has adjusted the matter in controversy with the petitioner herein, and according to a stipulation with parties filed herein the proceeding against her is dismissed.

The writ issued herein to show cause not having been served upon the defendant Priscilla Boatright, she not being found, this proceeding stands in abeyance as to her.